## STATE OF CONNECTICUT *v.* JOHN NAZARIO
## (13934)

LAVERY, HEIMAN and HENNESSY, Js.

Argued May 30—decision released August 1, 1995

*Martin M. Rizzi,* for the appellant (defendant).

*Christopher T. Godialis,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Carl E. Taylor,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a conditional plea of nolo contendere,[1] of possession of narcotics with intent to

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the

sell in violation of General Statutes § 21a-277 (a).[2] The defendant claims that the trial court improperly denied his motion to suppress evidence seized from his residence pursuant to a search warrant. We affirm the judgment of the trial court.

The facts necessary to a proper resolution of this appeal are as follows. On June 4, 1993, New Britain police submitted an application for a warrant to a judge of the Superior Court to search the defendant's residence at 534 East Main Street, first floor, in New Britain.[3] The items sought under the warrant included cocaine, related drug paraphernalia and other items commonly used in drug related transactions. The application included a four page, eighteen paragraph affidavit of New Britain police officers Jack Wenz and William Durkin, members of a special services unit charged with the investigation of narcotics violations in New Britain.

The following facts from the affidavit are relevant to the disposition of this appeal. In July, 1992, the special services unit was involved in an ongoing investi-

right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution." See also Practice Book § 4003.

[2] General Statutes § 21a-277 (a) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possess with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter . . . [shall be punished]."

[3] The application also sought authorization to search the defendant's person and a 1978 Toyota bearing Massachusetts registration plate 766EFS.

gation of drug related activity taking place at the Las Vegas Cafe in New Britain. As a result of this investigation, the New Britain police arrested Efrain Dominquez, also known to the police as Danny.[4] The police determined that Dominquez was a supplier of drugs to street level drug dealers in New Britain. Dominquez was charged with various drug related offenses and subsequently released on bond.

In March, 1993, the police received information from a confidential and reliable informant[5] that a Hispanic male known as Danny was "back in business" supplying drugs to street level drug dealers in New Britain. The informant thereafter examined a photographic array of eight Hispanic males, which included a photograph of Dominquez. The informant identified the photograph of Dominquez as that of the person he knew as Danny.

The informant also revealed the following information. A Hispanic male named John helped Dominquez deliver drugs. John was light skinned, about twenty years old, five feet eight inches tall and 175 pounds, with a goatee. Both men were responsible for drug sales at the Las Vegas Cafe and My Cousins Cafe in New Britain. The men had lived together at 67-69 Pleasant Street in New Britain, but John recently moved to an unknown location. Dominquez drove a blue Cadillac, as well as other vehicles. John drove a grey Toyota bearing Massachusetts registration plate 766EFS, and his telephone number was 225-7125.[6] Upon learning this, Wenz contacted the Southern New England Tel-

---

[4] The briefs of the parties refer to Dominquez as "Dominguez." We use the spelling of his name as it appears in the affidavit.

[5] The informant had assisted the New Britain police in the past with other investigations, resulting in the arrest and conviction of at least three people for drug related activity.

[6] The informant also identified Dominquez' telephone number and a beeper number that the two men used in their drug transactions.

ephone Company. The telephone company revealed that John's telephone number, 225-7125, was registered to the defendant at 71 Smalley Street, first floor, in New Britain.[7]

During the first week of April, 1993, members of the special services unit asked the informant to make a controlled cocaine buy from the defendant. The informant agreed and the police provided him with money to make the purchase. The informant called 225-7125 and spoke with the defendant, who arranged a time and place to meet the informant to sell him cocaine.

Wenz and the informant then proceeded to the prearranged meeting place and waited for the defendant to arrive. Meanwhile, Durkin was stationed in the area of 71 Smalley Street, and another officer was in the area of 67-69 Pleasant Street. Shortly after the informant called the defendant, Durkin observed the grey Toyota exit the driveway of 71 Smalley Street, driven by a Hispanic male who was the vehicle's only occupant. Durkin followed the Toyota to Pleasant Street, where it stopped at 67-69. The driver of the Toyota exited the vehicle, went to the rear of the house and returned to the car a few minutes later. He then left Pleasant Street and went to the location where Wenz and the informant were waiting. The driver pulled up to the informant, made a quick transaction and left. The police followed the Toyota back to 71 Smalley Street, where it pulled into the rear yard. The informant then met with Wenz and gave him a quantity of white powder purchased from the driver of the Toyota. The informant also identified the driver of the Toyota as the defendant. The white powder was then field-tested and the result was positive for the presence of cocaine.

[7] The defendant does not dispute that he is "John" referred to in the warrant affidavit. Therefore, we hereinafter refer to "the defendant" where the affidavit refers to John.

Later in April, 1993, as part of the ongoing drug investigation, police stopped the grey Toyota to identify the operator. The police identified the driver as the defendant. The vehicle was registered to the defendant's girlfriend, Maria Mendez.

During the months of April and May, 1993, the police conducted periodic surveillance of 71 Smalley Street and 67-69 Pleasant Street. During this time, the police observed the grey Toyota and the blue Cadillac make trips between both locations. The police also saw the grey Toyota make trips to various locations in the city, meeting people at pay telephones and on the street for only a few minutes. At these times, the police observed "quick transactions" and then observed the grey Toyota return to either Pleasant Street or Smalley Street. At the end of May, Wenz observed that the grey Toyota was "always going to and from the rear of 534 East Main Street with the entrance to that location being on the Noble Street side." This location is one block from 71 Smalley Street.

At the end of May, 1993, the special services unit asked the confidential informant to make another controlled cocaine buy from the defendant. The informant told the police that the defendant was still using telephone number 225-7125 for arranging drug deliveries. The informant called the defendant at that number, asked to purchase some cocaine, and arranged a time and place to meet with the defendant. Wenz and the informant then went to the prearranged location, while Durkin set up surveillance in the Smalley Street and Noble Street area. Shortly after the informant called the defendant, the grey Toyota exited Noble Street. Wenz observed the Toyota approach the prearranged location and pull up to the informant. Wenz identified the person operating the Toyota as the defendant. The informant and the defendant engaged in a quick transaction and the defendant then drove away in the

Toyota. The police followed the car to 67-69 Pleasant Street. After a few minutes, the car left Pleasant Street and went to the rear of 534 East Main Street. The informant met with Wenz and handed him a quantity of white powder purchased from the defendant. The white powder was field-tested and the result was positive for the presence of cocaine.

Wenz subsequently contacted the Southern New England Telephone Company and learned that 225-7125 was still listed in the name of the defendant, but that the location of the number was now 534 East Main Street, first floor, in New Britain. According to the affidavit, Wenz then "conducted additional surveillance of 534 East Main St. and on several occasions did observe the grey Toyota make trips to and from 67-69 Pleasant St. plus to and from various locations in the city, making what appeared to be quick transactions. This would indicate that [Dominquez] and [the defendant] are using their respective apartments at 67-69 Pleasant St., 2nd fl. and 534 East Main St., 1st fl. for carrying on their drug activity."

On the basis of the information contained in the affidavit, a judge of the Superior Court issued the search warrant. The New Britain police executed the warrant and seized cocaine, heroin, marijuana, a triple beam scale, packaging materials, drug paraphernalia, a gun, cash and other items from the defendant's residence.

The defendant was arrested and charged with various offenses in connection with his drug related activity. He entered a plea of not guilty and filed a motion to suppress the evidence seized from his residence pursuant to the execution of the search warrant. The motion to suppress was denied by the trial court. The defendant withdrew his plea of not guilty and entered a conditional plea of nolo contendere to a substitute information charging him in a single count with pos-

session of narcotics with intent to sell in violation of General Statutes § 21a-277 (a), reserving his right to appeal from the trial court's denial of his motion to suppress.

The defendant claims that the trial court should have granted his motion to suppress the evidence seized from his residence because the affidavit in support of the warrant application failed to establish probable cause.[8] We disagree.

"Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity; and (2) there is probable cause to believe that the items named will be found in the place to be searched." *State v. Barton*, 219 Conn. 529, 548, 594 A.2d 917 (1991); *State v. Torres*, 36 Conn. App. 488, 495–96, 651 A.2d 1327, cert. denied, 232 Conn. 912, 654 A.2d 357 (1995).

"The determination of whether probable cause exists to issue a search warrant under article first, § 7 of our state constitution,[9] and under the fourth amendment to the federal constitution,[10] is made pursuant to a

[8] In arguing that no probable cause existed in this case, the defendant principally relies on our Supreme Court's decision in *State v. DeChamplain*, 179 Conn. 522, 427 A.2d 1338 (1980). The defendant posits that the facts in the affidavit in the present case mirror the facts in the *DeChamplain* affidavit, and that, therefore, as a matter of law, we are required to reverse the judgment of the trial court. We disagree. The facts of this case are substantially different from the facts of *DeChamplain*, and, therefore, the defendant's reliance on that case is misplaced.

[9] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[10] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

'totality of the circumstances' test. *State* v. *Barton,* 219 Conn. 529, 544, 594 A.2d 917 (1991); *Illinois* v. *Gates,* 462 U.S. 213, 231–32, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). Under this test, in determining the existence of probable cause to search, the issuing judge must make a 'practical, nontechnical decision whether, given all the circumstances set forth in the warrant affidavit, including the "veracity" and the "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' *State* v. *Johnson,* 219 Conn. 557, 563, 594 A.2d 933 (1991)." *State* v. *Rodriguez,* 223 Conn. 127, 134–35, 613 A.2d 211 (1992).

This court, in reviewing the validity of a warrant, "must determine that the affidavit presented a substantial factual basis upon which the [issuing judge] could conclude that probable cause existed." *State* v. *Barton,* supra, 219 Conn. 552; *State* v. *Johnson,* supra, 219 Conn. 565; *State* v. *Ives,* 37 Conn. App. 40, 44, 654 A.2d 789 (1995). In making this determination, we are confined to the "four corners" of the warrant. *State* v. *Vincent,* 229 Conn. 164, 168, 640 A.2d 94 (1994). Thus, "we may consider only the information that was actually before the issuing judge at the time he or she signed the warrant, and the reasonable inferences to be drawn therefrom. . . . We view that information, however, in the light most favorable to the issuing judge's determination of probable cause . . . ." (Internal quotation marks omitted.) *State* v. *Ives,* supra, 44–45, quoting *State* v. *Duntz,* 223 Conn. 207, 216, 613 A.2d 224 (1992).

From the allegations set forth in the affidavit, and the reasonable inferences to be drawn therefrom, there was a substantial factual basis on which the issuing judge could conclude that probable cause existed that

the items sought under the search warrant would be found at the defendant's residence.

First, the affidavit established that the defendant was involved in illegal drug dealing. The defendant was associated with Dominquez, a known drug dealer, with whom he formerly resided at 67-69 Pleasant Street. The defendant was also responsible for drug dealing at the Las Vegas Cafe and My Cousins Cafe. Of most importance is that the police observed the defendant sell cocaine to the informant in two controlled drug buys.

Second, the affidavit established that the defendant consistently used the same telephone number and automobile to carry out his drug related activities from his place of residence. The defendant's telephone number at his former address, 71 Smalley Street, and at his new address, 534 East Main Street, was 225-7125. The informant used this telephone number to contact the defendant at his residence to purchase cocaine on two occasions. On both of these occasions, the defendant used the grey Toyota to consummate the transaction rapidly. Furthermore, the defendant's connection to the grey Toyota was not tenuous. The police identified the defendant as the operator of the Toyota during a traffic stop, and further discovered that the vehicle belonged to the defendant's girlfriend. The police also continuously observed the vehicle at the defendant's place of residence.

Finally, the affidavit established that the defendant was engaged in a recurring pattern of behavior that intimately linked his drug related activities to his place of residence. On the occasions that the informant purchased cocaine from the defendant, the defendant would do the following: (1) receive the telephone call at his residence at 225-7125; (2) depart from his residence or the immediate area in the grey Toyota; (3) arrive at the prearranged location to consummate

the sale quickly; and (4) return to his residence in the grey Toyota. The police observed this pattern of activity when the defendant lived at 71 Smalley Street and at 534 East Main Street, the site of the search at issue. In addition to observing the controlled drug buys take place in this manner, the police conducted careful and ongoing surveillance of the defendant's residence at 534 East Main Street. As a result of this investigation, the police observed the defendant repeat the pattern of activity as that described above. In these instances the defendant made quick transactions at various locations in the city, traveling to and from 534 East Main Street in the process. This indicated that the defendant was using his residence at 534 East Main Street in connection with his drug related activity. The defendant's residence "was not merely a 'criminal forum of convenience' but rather a 'secure operational base.' " *State* v. *Johnson,* supra, 219 Conn. 568.

"We have recognized that the business of dealing in illegal drugs often involves a course of conduct that continues over a long period of time and is usually considered to be a regenerating activity." *State* v. *Torres,* supra, 36 Conn. App. 498. "When a suspect has been carrying on an illegal activity for an extended period of time without detection, it is reasonable to conclude that evidence of his activity will be secreted in his home." *State* v. *Vallas,* 16 Conn. App. 245, 262, 547 A.2d 903 (1988), aff'd sub nom. *State* v. *Calash,* 212 Conn. 485, 563 A.2d 660 (1989). " 'In the case of drug dealers, evidence is likely to be found where the dealers live.' " *State* v. *Castano,* 25 Conn. App. 99, 104, 592 A.2d 977 (1991), quoting *United States* v. *Angulo-Lopez,* 791 F.2d 1394, 1399 (9th Cir. 1986). "Actual observations of illegal activity or contraband *in the premises to be searched,* however, are not required to establish probable cause." (Emphasis added.) *State* v. *Castano,* supra, 103.

We conclude that the trial court correctly found that there was a substantial factual basis to support the issuing magistrate's finding of probable cause that the defendant's residence contained the items sought under the search warrant, and thus acted properly in denying the defendant's motion to suppress. "The nexus between the items sought and the place to be searched may be inferred from the type of crime, the nature of the evidence, the extent of an opportunity for concealment and normal inferences as to where a criminal would likely hide the item[s]." *State* v. *Rodriguez*, 27 Conn. App. 307, 313, 606 A.2d 22 (1992).

The judgment is affirmed.

In this opinion the other judges concurred.