2001 UT 104

**STATE of Utah, Plaintiff and Appellant,**

v.

**Richard NORRIS, Defendant
and Appellee.**

No. 20000698.

Supreme Court of Utah.

Dec. 11, 2001.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, E. Neal Gunnarson, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

Jared W. Eldridge, Provo, for defendant.

DURRANT, Justice:

¶1 In this appeal, we consider the constitutionality of a search warrant issued by a magistrate authorizing the seizure of all business records from three corporations. The corporations were allegedly operated by Richard Norris to commit communications fraud. At a pre-trial hearing, the district court held that, although probable cause existed for the issuance of the "all records" search warrant, the warrant violated the Fourth Amendment's particularity requirement because it was overly broad. Due to that determination, the district court suppressed all the evidence seized by the State pursuant to the warrant. We affirm the district court's probable cause holding, but reverse its decision with respect to the Fourth Amendment's particularity requirement. An "all records" search warrant is sufficiently particular where the affidavit serving as the basis for the warrant includes allegations sufficient to support a conclusion that the business to be searched is permeated with fraud. Such an affidavit is present here. Accordingly, we hold that the district court erred in granting Norris's motion to suppress.

## BACKGROUND

¶2 On April 1, 1997, Ronald Barton, a Special Agent for the Utah Attorney General's Office, Consumer Rights Division, appeared before a magistrate requesting a search warrant. In support of his request, Barton prepared a twenty-one page affidavit and presented it to the magistrate. In this affidavit, Barton alleged that Norris and Emilio Cortez defrauded citizens of Utah via three companies incorporated in Pennsylvania: Maxtron Corporation, Santos International, and United Investors Credit Services. Specifically, Barton claimed that Norris had devised and implemented a scheme to defraud Utah subcontractors by inducing them to enter into advertising contracts, inducing them to breach these contracts, and then suing them.

## I. ALLEGATIONS CONTAINED IN BARTON'S AFFIDAVIT

¶3 Barton's affidavit relied upon statements obtained from eleven individuals, including two of Norris's former employees and several subcontractors. Based on these statements, Barton claimed that Norris initiated the fraud by approaching general contractors conducting business in Utah and asking them to "sponsor" quarterly construction brochures. These brochures contained space for advertising. Norris allegedly persuaded the general contractors to act as sponsors by offering to publish the brochures free of charge.

¶4 Once Norris received approval from the general contractors, he purportedly sold the advertising space included in the brochures to subcontractors that had a prior employment relationship with the general contractor. Barton further alleged in his affidavit that ninety-nine percent of the subcontractors purchasing advertising space signed promissory notes obligating them to make installment payments to Maxtron, a corporation listing Norris as its president. These signed notes contained a confession of judgment provision recognized under Pennsylvania law,[1] which authorized Maxtron to obtain confessions of judgment against defaulting subcontractors for the full amount of

1. Pennsylvania's confession of judgment provision permits a creditor, upon the default of a debtor, to appear in court and obtain a judgment without notifying the debtor of the legal proceeding. *See* Pa. R. Civ. P. 2952.

the promissory note and $2,000 in attorney fees.

¶ 5 Following the execution of these promissory notes, Norris, acting on behalf of Maxtron, allegedly transferred Maxtron's contractual rights to Santos International. Norris then, acting as an agent for Santos International, immediately transferred the rights from Santos International to United Investors. Although Norris allegedly informed the subcontractors that he had no affiliation with either Santos International or United Investors, Barton's affidavit asserted that Norris opened the mail sent to each corporation, managed the finances of both companies, and was the sole signatory on all of the accounts owned by the two businesses.

¶ 6 Following the transfer of these contractual rights, Norris purportedly led the subcontractors into default through various misrepresentations. According to the affidavit, Norris lulled the subcontractors into default by informing them that they did not have to make any payments until they received, and approved, the advertisement proofs from Maxtron. Further, Norris allegedly told the subcontractors they should ignore any notices demanding payment sent by Santos International or United Investors.

¶ 7 According to the affidavit, the subcontractors relied on Norris's misrepresentations and defaulted on the promissory notes. Norris then allegedly obtained confessions of judgment against the subcontractors in Pennsylvania. These default judgments resulted in United Investors recovering the full value of the promissory notes and $2,000 in attorney fees.

¶ 8 Barton's affidavit also included extensive allegations regarding the business purpose behind the Pennsylvania corporations, including the following allegations: (1) the money generated from the advertising contracts sold to the subcontractors barely covered the cost of publishing the brochures, (2) Maxtron produced just one legitimate brochure during the six month tenure of one of Norris's former employees, (3) Maxtron occasionally published falsified brochures in an attempt to prove that the advertisement proofs were created before the subcontractors had defaulted, (4) Norris incorporated Maxtron, Santos International, and United Investors in Pennsylvania to take advantage of Pennsylvania's confession of judgment law, (5) Norris inserted the confession of judgment language into the promissory notes because it enabled him to obtain judgments against the subcontractors without notifying them or serving them with any papers, (6) Norris preferred to sue the subcontractors because "suing the subs on the contracts was actually how he made his money," and (7) Norris profited in the amount of $1800 by including the attorney fee provision in the promissory notes because he paid his attorneys only $200 for each default judgment.

## II. ISSUANCE OF THE "ALL RECORDS" SEARCH WARRANT

¶ 9 Based on the allegations contained in Barton's affidavit, the magistrate concluded that all the business documents of the three corporations were "used to commit a ... public offense," intended to be "use[d] as a means of committing a ... public offense," or comprised "evidence of illegal conduct." The magistrate therefore issued a search warrant authorizing state agents to (1) search both Norris's business establishment and personal residence and (2) seize "documents relating to the business activities of Richard Franklin Norris and Emilio Cortez, operating as Maxtron Corp.[ ], Santos International, and United Investors." Acting under the authority of this warrant, state agents seized all the business documents of the three corporations located at the two locations specified in the warrant.

## III. DISTRICT COURT REVIEW

¶ 10 Subsequently, the State charged Norris with seven counts of communications fraud. Following a preliminary hearing, the district court bound Norris over for trial on all seven counts. Norris then moved to suppress the evidence seized by the State pursuant to the warrant. After a hearing on this matter, the district court granted Norris's motion to suppress, concluding that the search warrant violated the Fourth Amendment's particularity requirement. The dis-

trict court did so despite holding that Barton's affidavit provided sufficient probable cause for the magistrate to issue the warrant. Thereafter, the State petitioned the Utah Court of Appeals for permission to bring an interlocutory appeal. *See* Utah R.App. P. 5(a). The court of appeals granted that request and later certified the State's appeal to this court pursuant to rule 43 of the Utah Rules of Appellate Procedure.

## IV. CLAIMS ON APPEAL

¶ 11 On appeal, the State argues that the district court erred in granting Norris's motion to suppress, challenging the court's determination that the "all records" search warrant violated the Fourth Amendment. In response, Norris contends that the district court properly concluded that the "all records" search warrant was overbroad. He asserts that the search warrant issued by the magistrate violated both the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Utah Constitution. He further claims that even if the language of the search warrant is sufficiently particular, the judgment below should be affirmed because the magistrate lacked a substantial basis for concluding that probable cause existed to support the search warrant.

## ANALYSIS

¶ 12 This appeal raises the following issues: (1) whether Barton's affidavit contained sufficient information to allow the magistrate to determine that probable cause existed for the issuance of the search warrant, and (2) whether a search warrant permitting the seizure of all business records is sufficiently particular under (a) the Fourth Amendment of the United States Constitution or (b) Article I, Section 14 of the Utah Constitution.

¶ 13 Addressing each question in turn, we first conclude that the district court properly

affirmed the magistrate's probable cause finding. We reverse the district court's decision to suppress the evidence seized by the State, however, holding that the "all records" search warrant complies with the requirements of the Fourth Amendment because Barton's affidavit included allegations sufficient to establish probable cause that the three corporations were permeated with fraud. We do not address Norris's state constitutional argument because he has not adequately briefed that claim.

## I. THE MAGISTRATE HAD A SUBSTANTIAL BASIS FOR CONCLUDING THAT PROBABLE CAUSE EXISTED TO BELIEVE THAT EVIDENCE OF A CRIME WOULD BE FOUND AT THE TWO PLACES NAMED IN THE WARRANT

### A. Standard Of Review

¶ 14 Where a search warrant supported by an affidavit is challenged as having been issued without an adequate showing of probable cause, our review focuses on the magistrate's probable cause determination.[2] *See, e.g., State v. Thurman,* 846 P.2d 1256, 1259–60 (Utah 1993); *State v. Babbell,* 770 P.2d 987, 991 (Utah 1989); *State v. Hansen,* 732 P.2d 127, 129 (Utah 1987). In reviewing the magistrate's decision, we assess whether the magistrate had a " 'substantial basis' for determining that probable cause existed." *Thurman,* 846 P.2d at 1259–60 (quoting *Babbell,* 770 P.2d at 991). We afford the magistrate's decision " 'great deference' " and consider the affidavit relied upon by the magistrate " 'in its entirety and in a common[ ]sense fashion.' " *Id.* at 1260 (quoting *Babbell,* 770 P.2d at 991). "The affidavit must support the magistrate's decision that there is a 'fair probability' that evidence of the crime will be found in the place or places named in the warrant." *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (footnote omitted)).

2. To be precise, we review the district court's assessment of the magistrate's probable cause determination for correctness and ask whether the district court erred in concluding that the magistrate had a substantial basis for her probable cause determination. The analysis is the same, however, when our review is focused directly on the magistrate's probable cause determination from the outset. *See State v. Thurman,* 846 P.2d 1256, 1260 (Utah 1993). Under either approach, we must ascertain whether the magistrate had a substantial basis for her probable cause determination. *Id.*

### B. Analysis

¶ 15 In this case, the magistrate concluded that there was probable cause to believe (1) that evidence of illegal conduct would be found at the two places named in the warrant and (2) that all the business records of Maxtron, Santos International, and United Investors related to criminal activity. Because the magistrate's probable cause finding included two separate determinations, we deem it necessary to engage in a two-step probable cause analysis. As a threshold matter, we must determine whether the magistrate had a substantial basis for her probable cause finding that evidence of illegal conduct would be found at the places specified in the warrant. *See Thurman*, 846 P.2d at 1260. Assuming the magistrate had a substantial basis for her initial probable cause determination, we must then, in order to assess whether the Fourth Amendment's particularity requirement was satisfied, ascertain whether the magistrate had a substantial basis for concluding that probable cause supported the seizure of all the business records of the Pennsylvania corporations.[3] *Id.*

¶ 16 Reviewing Barton's affidavit in its entirety, we first conclude that the magistrate had a substantial basis for determining that probable cause existed to believe that evidence of illegal conduct would be found at the places designated in the warrant. A substantial basis existed because the twenty-one page affidavit submitted by Barton included extensive and detailed information regarding Norris's allegedly fraudulent business scheme. *See United States v. Kail*, 804 F.2d 441, 444 (8th Cir.1986) (holding that a magistrate had a substantial basis for determining that probable cause existed where the supporting affidavit elaborated on the crime in detail); *State v. Bailey*, 675 P.2d 1203, 1206 (Utah 1984) (concluding that an affidavit describing the defendants' scheme in detail, including personal observations of the crime, warranted a finding of probable cause); *State v. Romero*, 624 P.2d 699, 703–04 (Utah 1981) (holding that a magistrate had a substantial basis to support a finding of probable cause because the affidavit recounted the alleged criminal activity in detail). Indeed, contrary to Norris's assertion, Barton's affidavit did not merely provide irrelevant, inadmissible, or conclusory information; rather, the twenty-one page affidavit chronicled Norris's alleged scheme at length and provided the magistrate with a "fair probability" that a search of the two locations would uncover evidence of fraud.[4] *Thurman*, 846

---

3. We conduct the second half of our probable cause inquiry in Part II(B) of our analysis. *See* Part II(B) *infra.*

4. Norris also contends that Barton's affidavit did not support the magistrate's probable cause finding because it contained stale and expunged information. With respect to his staleness argument, Norris asserts that the information provided to Barton was outdated and that Barton did not specify precisely when the fraudulent acts were committed. Both of Norris's staleness contentions lack merit. Staleness issues arise where "so much time has passed that there is no longer probable cause to believe that the evidence is still at the targeted locale." *Thurman*, 846 P.2d at 1260. The affidavit in this case, couched as it was in present-tense language, described ongoing criminal activity and "clearly refute[d] any contention that it was based on stale information." *State v. Anderton*, 668 P.2d 1258, 1261 (Utah 1983). Further, where a commonsense reading of an affidavit presents a substantial basis for the magistrate to conclude that the criminal activity is continuous, specific dates are unnecessary to sustain the validity of the professed facts. *See id.* at 1260–61.

Norris's assertion that the affidavit erroneously included expunged information is similarly unavailing. Although Norris contends that statements from his two former employees should have been barred because the two employees testified at a hearing that was later expunged, we disagree. An expungement order prevents persons "who have access to the sealed record, or whose testimony is bolstered by reference to it[, from] 'recreat[ing]' the record in proceedings subsequent to the expungement." *Ambus v. Utah State Bd. of Educ.*, 800 P.2d 811, 813 (Utah 1990). Such an order does not preclude witnesses who have knowledge independent of the expunged record from testifying on a subsequent occasion. *Cf. id.* at 813–14 (noting that "although court records are sealed, employers or licensing agencies may make independent inquiry into the acts of those who are or will be employed" as long as the information is acquired from a source independent of the expunged record).

The record presented to us includes no evidence that the statements made by either employee were derived from, or bolstered by, the expunged record. Rather, the statements provided by the two employees appear to be based

P.2d at 1260 (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. 2317).

¶ 17 For instance, in his affidavit, Barton alleged that Norris sold advertising space to Utah subcontractors and then stalled those subcontractors into default through various misrepresentations. He further claimed that Norris capitalized on favorable default provisions included in the advertising agreements by obtaining confessions of judgment against the defaulting subcontractors in Pennsylvania. Expounding on this alleged scheme at length, Barton asserted that evidence of a criminal offense could be found at Norris's Utah office and residence because "the three Pennsylvania corporations were operated by Norris from his West Valley office" and Norris stored some business records at his personal residence.

■ ¶ 18 Moreover, Barton supported the allegations set forth in his affidavit by citing information gleaned from eleven different individuals. This extensive support enhances the affidavit's credibility because "reliability and veracity are generally assumed when the informant is a citizen who receives nothing from the police in exchange for the information." [5] *State v. Purser*, 828 P.2d 515, 517 (Utah Ct.App.1992).

¶ 19 As further proof of the affidavit's reliability, we note that the eleven individuals interviewed by Barton were intimately acquainted with Norris's alleged modus operandi. *See Hansen*, 732 P.2d at 130 (noting that reliability of information is enhanced if the informant personally observes the crime); *see also Gates*, 462 U.S. at 234, 103 S.Ct. 2317 (declaring that a "detailed description of the alleged wrongdoing, along with a statement that the event was observed firsthand," increases the reliability of an informant's tip). In fact, the individuals interviewed by state agents claimed that they were either person-

ally defrauded by Norris or unwittingly duped into assisting him. The information gleaned from Norris's two former employees is particularly persuasive. Both employees made statements indicating that the Pennsylvania businesses were nothing but fronts to perpetrate a fraud. Barton's affidavit therefore provided substantial support for the magistrate's conclusion. Accordingly, we uphold the magistrate's decision that probable cause existed to believe that evidence of communications fraud would be found at the places named in the warrant.

## II. A SEARCH WARRANT AUTHORIZING THE SEIZURE OF ALL BUSINESS RECORDS IS SUFFICIENTLY PARTICULAR UNDER THE FOURTH AMENDMENT WHERE THERE IS PROBABLE CAUSE TO BELIEVE THAT THE BUSINESS TO BE SEARCHED IS PERMEATED WITH FRAUD

### A. Standard Of Review

■ ¶ 20 We next address whether the "all records" search warrant issued by the magistrate violated the Fourth Amendment's particularity requirement.[6] The district court ruled that the search warrant was unconstitutionally overbroad and thus suppressed the evidence seized by the State. Because the district court's conclusion regarding the scope of the Fourth Amendment's particularity requirement is a question of law, we review the court's decision for correctness. *See State v. Brown*, 853 P.2d 851, 855 (Utah 1992); *see also United States v. Leary*, 846 F.2d 592, 600 (10th Cir.1988) (declaring that a district court's decision to strike down a search warrant as overly broad is subject to de novo review).

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly* describing the place to be searched, and the person or things to be seized. ·

U.S. Const. amend. IV. (emphasis added).

---

entirely on the experiences they had while working for Norris. Accordingly, we uphold the district court's conclusion that the affidavit did not include expunged information.

5. We find nothing in the record that suggests Norris's former employees received immunity or any other benefit in return for their testimony.

6. The Fourth Amendment of the United States Constitution reads as follows:

## B. Analysis

¶ 21 Federal circuits addressing the Fourth Amendment's particularity requirement have concluded that an "all records" search warrant complies with the United States Constitution where there is probable cause to believe that the business to be searched is permeated with fraud. *United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir.1992); *United States v. Kail*, 804 F.2d 441, 445 (8th Cir.1986); *see also United States v. Bentley*, 825 F.2d 1104, 1110 (7th Cir.1987); *Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir.1986); *United States v. Offices Known As 50 State Distrib. Co.*, 708 F.2d 1371, 1374 (9th Cir.1983); *cf. United States Postal Serv. v. C.E.C. Servs.*, 869 F.2d 184, 187 (2d Cir.1989) (stating that "when the criminal activity pervades the entire business, seizure of all business records is appropriate, and broad language used in warrants [does] not offend the particularity requirement[ ]").

¶ 22 Although we have not had occasion in the past to address this question, we now adopt the rule articulated by our federal colleagues. We hold that an "all records" search warrant is constitutional where there is probable cause to believe that the business to be searched is permeated with fraud. *Oloyede*, 982 F.2d at 141; *Kail*, 804 F.2d at 445. We emphasize that the "permeated with fraud" doctrine does not stand for the proposition that an "all records" search warrant is constitutional whenever a business allegedly commits an act of fraud. If the fraudulent conduct infects only one part of the business, the warrant must be limited to documents related to that particular aspect of the business operation. *Bentley*, 825 F.2d at 1110. But, where the whole business is "permeated with fraud," a warrant authorizing the seizure of all the business records of a corporation is permissible. *Kail*, 804 F.2d at 445.

¶ 23 In the present case, the magistrate found probable cause to believe that all the business records of Maxtron, Santos International, and United Investors related to criminal activity. Norris contends that this finding is insufficient to support an "all records" search warrant because the magistrate never determined that the three corporations were "permeated with fraud." We disagree. Although the magistrate did not specifically state that Norris's businesses were permeated with fraud, that conclusion is necessarily encompassed within her probable cause finding. To find that "there [was] probable cause to believe" that *all* the documents of the three companies related to "illegal conduct" or to a "public offense," as the magistrate's warrant did, is the substantive equivalent of finding that the companies were permeated with fraud.

¶ 24 Moreover, Norris points to no authority for the proposition that a magistrate must explicitly state that a business is permeated with fraud in order to issue an "all records" search warrant. An "all records" search warrant issued by a magistrate is valid if the supporting affidavit relied upon by the magistrate includes allegations sufficient to establish probable cause that the business to be searched was permeated with fraud.[7] *Oloyede*, 982 F.2d at 141. We therefore hold that requiring a magistrate to use the phrase "permeated with fraud" would be "unreasonably 'hypertechnical.' " *Cf. id.* at 140–41 (holding it would be unreasonably hypertechnical to require an affiant to specifically claim that the business was permeated with fraud).

¶ 25 Because the magistrate found probable cause to believe that all the business records of the Pennsylvania corporations related to criminal activity, we need only ensure that, as in our previous probable cause inquiry, the magistrate had a " 'substantial basis' " for her probable cause finding. *Thurman*, 846 P.2d at 1260 (quoting *Babbell*, 770 P.2d at 991). Here, Barton's affidavit provided a sufficient basis for the

---

7. An affidavit can satisfy the showing required for an "all records" search warrant by either explicitly stating that there is probable cause that the business to be searched is permeated with fraud and tendering evidence supportive of that assertion or by implicitly establishing such probable cause. *See Oloyede*, 982 F.2d at 141.

magistrate's determination.[8] The detailed affidavit indicated that Maxtron, Santos International, and United Investors were not engaged in any legitimate business activity. Specifically, Barton's affidavit declared as follows: (1) "only one brochure was actually sent out on time" during the six month tenure of one of the employees, (2) "that the money from advertising barely covered the cost of publishing the brochures," and (3) Norris "did not mind suing the subs in court because suing the subs on the contracts was actually how he made his money."

¶ 26 Further, Barton's affidavit included allegations that the three corporations were primarily operated as instrumentalities to defraud Utah subcontractors. In particular, the affidavit asserted that Norris incorporated the companies in Pennsylvania, "to take advantage of Pennsylvania's confession of judgment[ ] law" and to avoid "the necessity of notifying [the subcontractors] or serving them with any papers." The affidavit therefore provided a substantial basis to believe that Norris's businesses were permeated with fraud.

¶ 27 Since Barton's affidavit provided probable cause to believe that the corporations were fraudulent through and through, every transaction undertaken by one of them was potential evidence of communications fraud. *Bentley*, 825 F.2d at 1110. It was therefore impossible, before the execution of the warrant, to "separate those business records that would be evidence of the fraud from those that would not." *Kail*, 804 F.2d at 445. A more particular description of the documents to be seized could not be provided because "fraud [allegedly] permeated the entire business operation." *Offices Known As 50 State Distrib. Co.*, 708 F.2d at 1374. Accordingly, the "all records" search warrant issued by the magistrate is constitutional under the "permeated with fraud" doctrine.[9]

## III. WE DECLINE TO ADDRESS NORRIS'S STATE CONSTITUTIONAL ARGUMENT BECAUSE HE INADEQUATELY BRIEFED THAT CLAIM

¶ 28 Norris further asserts that Article I, Section 14 of the Utah Constitution, Utah's counterpart to the Fourth Amendment, forbids the "all records" search warrant issued by the magistrate. We decline to address this argument because Norris provides us with no substantive reason for construing Article I, Section 14 of the Utah Constitution,[10] which is nearly identical to the Fourth Amendment, as affording him greater protection than the Fourth Amendment. *See State v. Davis*, 972 P.2d 388, 392 (Utah 1998) (refusing to discuss defendant's state constitutional argument because he failed to support it with any substantive analysis that warranted distinct analytical treatment); *see also State v. Real Property at 633 E. 640 N.*, 2000 UT 17, ¶ 5, 994 P.2d 1254 (deciding only the appellant's federal constitutional claim be-

---

8. Norris relies on two cases from the Tenth Circuit to support his contention that the "all records" search warrant issued by the magistrate violates the Fourth Amendment's particularity requirement. We conclude that both cases are distinguishable from the case at bar. The reasoning of *Voss v. Bergsgaard*, 774 F.2d 402, 406 (10th Cir.1985), is not applicable to the present circumstance because the Tenth Circuit expressly noted that fraud did not pervade every aspect of the business to be searched. *Id.* Instead, the government's affidavit pointed only to evidence of tax fraud. *Id.* Moreover, the court explicitly stated that there are situations where an all records search warrant would be appropriate. *Id.*

*United States v. Leary*, 846 F.2d 592 (10th Cir.1988), is likewise inapposite. In that case, the court discussed the "permeated with fraud" doctrine merely in passing, noting only that the business at issue was not permeated with fraud. *Id.* at 602 n. 17. Thus, neither *Voss* nor *Leary* contradicts our holding.

9. The State also asserts that the district court erred in granting Norris's motion to suppress because the officers conducting the search relied on the warrant and acted in good faith. We find it unnecessary to discuss the good faith exception to the exclusionary rule, however, because we conclude that the "all records" search warrant was valid.

10. Article I, Section 14 of the Utah Constitution provides as follows:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.

Utah Const. art. I, § 14.

cause she failed to support her state constitutional argument with any substantive analysis). As we have consistently declared, we are not a " 'depository in which [a] party may dump the burden of argument and research.' " *State v. Bishop,* 753 P.2d 439, 450 (Utah 1988) (quoting *Williamson v. Opsahl,* 92 Ill.App.3d 1087, 48 Ill.Dec. 510, 416 N.E.2d 783, 784 (1981)). Thus, we decline to review Norris's state constitutional claim.

## CONCLUSION

¶ 29 Although we affirm the district court's holding that the magistrate had probable cause to issue the search warrant, we conclude that the district court erred in finding the "all records" search warrant was overbroad under the United States Constitution. The "all records" warrant complied with the Fourth Amendment's particularity requirement because Barton's affidavit demonstrated there was probable cause to believe that Norris's businesses were permeated with fraud. We therefore reverse the district court's overbreadth ruling and remand the case for further proceedings consistent with this opinion.

¶ 30 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.