2009 UT App 14

STATE of Utah, Plaintiff and Appellee,

v.

David VASQUEZ–MARQUEZ,
Defendant and Appellant.

No. 20070488–CA.

Court of Appeals of Utah.

Jan. 23, 2009.

Margaret P. Lindsay, Spanish Fork, for
Appellant.

Mark L. Shurtleff, atty. gen., and Joanne
C. Slotnik, asst. atty. gen., Salt Lake City,
for Appellee.

Before THORNE, Associate P.J., BILLINGS,[1] and DAVIS, JJ.

## OPINION

DAVIS, Judge:

¶1 A jury convicted David Vasquez–Marquez (Vasquez) of possession of a controlled substance with intent to distribute in a drug-free zone, a first degree felony, *see* Utah Code Ann. § 58–37–8(1)(a)–(b), (4) (Supp. 2008). Vasquez appeals, arguing that the trial court erred in denying his motion to suppress the evidence found during a search of his home. We agree and reverse.

## BACKGROUND

¶2 On September 14, 2006, Sergeant Troxel of the Provo Police Department prepared a search warrant for Vasquez's home, where Vasquez lived with his wife and children. In the affidavit supporting the search warrant, Sergeant Troxel included the following facts: a reliable confidential informant (the CI) "had personal knowledge that [Vasquez] was dealing cocaine"; the CI also knew where Vasquez lived; Vasquez's vehicles were registered to this same address; the CI and Sergeant Troxel conducted five controlled buys from Vasquez, the last being within seventy-two hours of the warrant request;[2] Vasquez drove to his home *after* two of the five controlled buys; within minutes of each call to request drugs, Vasquez or an unidentified Hispanic male would meet the CI at the predetermined location; on three occasions Vasquez and the Hispanic male arrived together, with Vasquez driving a vehicle registered in his name; Vasquez had an extensive criminal history, which included convictions for illegal possession or use of controlled substances; and, finally, Vasquez's home is half a block from Orem Junior High School. The search warrant was issued, and its execution uncovered the large amount of cocaine that formed the basis for the possession with

intent to distribute charge filed against Valdez.[3]

¶3 Prior to trial, Vasquez filed a motion to suppress the evidence, alleging that the affidavit in support of the search warrant failed to provide probable cause that illegal drugs would be found at his home. The trial court denied the motion, concluding that Sergeant Troxel's affidavit provided "a sufficient nexus" between Vasquez's cocaine distribution and his home "to support the issuance of the search warrant." Vasquez now appeals the denial of his motion to suppress.

## ISSUE AND STANDARD OF REVIEW

¶4 The only issue on appeal is whether the search warrant was supported by probable cause. "In reviewing the magistrate's [probable cause] decision, we assess whether the magistrate had 'a substantial basis for determining that probable cause existed.'" *State v. Norris*, 2001 UT 104, ¶14, 48 P.3d 872 (quoting *State v. Thurman*, 846 P.2d 1256, 1260 (Utah 1993)). The magistrate's decision is afforded "'great deference,'" and we consider the affidavit "'in its entirety and in a common[ ]sense fashion.'" *Id.* (alteration in original) (quoting *Thurman*, 846 P.2d at 1260).

## ANALYSIS

¶5 In order for a search warrant of a residence to be lawful, it must be supported by probable cause. "'Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched.'" *State v. Dable*, 2003 UT App 389, ¶5, 81 P.3d 783 (quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)). "The affidavit [justifying a search warrant] must support the magistrate's decision that there is a 'fair probability' that evidence of the crime will be found in the place or places named in the warrant." *Thurman*, 846 P.2d at 1260. The question

---

1. Judge Billings acted on this case prior to her retirement on December 31, 2008.

2. Vasquez does not claim that the warrant was stale, *see generally State v. Thurman*, 846 P.2d 1256, 1260 (Utah 1993) (explaining staleness issues); therefore, we do not address staleness.

3. The only charge in this case was possession with intent to distribute; this case does not involve any charges based on the controlled buys described in Sergeant Troxel's affidavit.

before us is whether the facts stated in Sergeant Troxel's affidavit provided probable cause to issue the search warrant for Vasquez's home.

¶ 6 Vasquez relies on *United States v. Rowland*, 145 F.3d 1194 (10th Cir.1998), for the proposition that "[p]robable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be *additional* evidence linking the person's home to the suspected criminal activity." *Id.* at 1204 (emphasis added). We agree. Affidavits may not be "purely conclusory" but must detail the " 'underlying circumstances' " in order to support a determination that probable cause exists. *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Of course, in determining whether there is a fair probability that evidence of a crime will be found in the place to be searched, the magistrate may draw "reasonable inferences" from the information given in the search warrant application. *Illinois v. Gates*, 462 U.S. 213, 240, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Such inferences, however, must be based on specific facts and cannot be the result of broad · generalizations.[4] Thus, "[a]lthough common sense and experience inform the inferences reasonably to be drawn from the facts, broad generalizations do not alone establish probable cause.... [G]eneralizations

do not substitute for facts and investigation." *State v. Thein*, 138 Wash.2d 133, 977 P.2d 582, 589–90 (1999). In sum, an affidavit that details only the facts showing that the accused had been involved in selling drugs will never allow a reasonable inference that those drugs are stored at the accused's residence.

> [An] affidavit [that] provide[s] no basis to either limit the possible sites or suggest that [the suspect's] home was more likely than the otherwise endless possibilities .... is insufficient to provide a substantial basis for concluding there was probable cause to believe the contraband would be in [the suspect's] home at the time the search was to take place.

*Rowland*, 145 F.3d at 1205. Any other rule would erode Fourth Amendment protections because where " 'there is nothing to connect the illegal activities with the arrested person's [residence], to issue a warrant based solely on the agent's expert opinion would be to license virtually automatic searches of residences of persons arrested for narcotics offenses.' " *Sowers v. Commonwealth*, 49 Va. App. 588, 643 S.E.2d 506, 511 (2007) (quoting *United States v. Gomez*, 652 F.Supp. 461, 463 (E.D.N.Y.1987)).[5]

¶ 7 The State argues that such generalizations are sufficient, citing to several cases that it claims have determined that a sus-

---

4. The "inferences" relied upon by the dissent amount to unsupported speculation. First, the fact that Vasquez's vehicle was registered to his home address does not support an inference that he would store his drug trafficking items there. Second, there is nothing in Sergeant Troxel's affidavit indicating that any cash was involved in the described transactions, let alone enough that "would require a secure place to store any cash obtained from the controlled buys," *see infra* ¶13. And third, the fact that *after* two of the five buys Vasquez drove to his home does not "limit the possible sites or suggest that [Vasquez's] home was more likely than the otherwise endless possibilities" where drugs would be stored, *see United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir.1998).

5. The State cites *Sowers v. Commonwealth*, 49 Va.App. 588, 643 S.E.2d 506 (2007), in support of its position, quoting the observation contained therein that, unlike an individual involved in a single drug transaction, "[a]n individual engaging in multiple drug sales is far more likely to

possess and store the typical 'tools of the trade' [in his or her residence]," *id.* at 511. But the *Sowers* court also discussed the danger of relying on mere generalizations:

> While a magistrate may consider a police officer's statement of experience, it is not sufficient by itself to provide a basis for probable cause. The officer's statements of experience set forth generalizations about the behavior of drug users and distributors, rather than specific facts. A *factual* nexus must connect the illegal activity to the place to be searched; otherwise police would have unfettered discretion to avow that criminals often keep contraband at home and then search the home of every suspect.

*Id.* at 510. The *Sowers* court determined that a sufficient nexus had *not* been established but ultimately affirmed under the good faith exception to the exclusionary rule, *see id.* at 514; *see generally United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (recognizing the good faith exception), which exception has not been argued in the instant case.

pect's status as a drug dealer is, by itself, a sufficient basis for probable cause to search his or her residence. *See, e.g., State v. Nazario,* 38 Conn.App. 588, 662 A.2d 1313, 1318 (1995) ("In the case of drug dealers, evidence is likely to be found where the dealers live." (internal quotation marks omitted)); *State v. Perez,* 92 Wash.App. 1, 963 P.2d 881, 884 (1998) (" '[A] nexus is established between a suspect and a residence if the affidavit provides probable cause to believe the suspect is involved in drug dealing and the suspect is ... living there ....' " (quoting *State v. O'Neil,* 74 Wash.App. 820, 879 P.2d 950, 953 (1994), *overruled by State v. Thein,* 138 Wash.2d 133, 977 P.2d 582 (1999))).[6] Yet in nearly all of the cases that the State cites, probable cause was not simply based on generalizations about drug dealers but, rather, each affiant had additional facts that supported the reasonable inference that the drugs were at the suspect's residence instead of somewhere else. *See United States v. McClellan,* 165 F.3d 535, 546 (7th Cir.1999) (" '[The informant] had seen [the suspect] back-up his pick-up truck to a storage facility, located at the residence ... and unload bundles of marijuana into the storage facility' ...."); *United States v. Reddrick,* 90 F.3d 1276, 1279 (7th Cir.1996) (quoting testimony that the informant had very recently been in the residence and had seen several kilos of drugs there); *United States v. Angulo-Lo-*

*pez,* 791 F.2d 1394, 1396 (9th Cir.1986) (stating that citizen informants had reported that the suspect was selling drugs out of his residence); *Nazario,* 662 A.2d at 1316-17 (indicating that the police verified that the residence was the location of the suspect's phone number and followed the suspect from the residence to other places where what appeared to be quick drug transactions occurred); *People v. Lyons,* 373 Ill.App.3d 1124, 313 Ill.Dec. 410, 872 N.E.2d 393, 395 (2007) (stating that a police surveillance team observed the suspect, shortly after receiving a phone call requesting drugs, leave his residence and drive to the specified location for the transaction); *Commonwealth v. Luthy,* 69 Mass.App.Ct. 102, 866 N.E.2d 930, 934 (2007) ("[S]urveillance revealed that the black GMC Envoy, used in both controlled buy transactions, was parked at the ... residence *prior to,* and immediately following, the second buy." (emphasis added)); *Perez,* 963 P.2d at 884 (discussing police observations of the suspect driving directly to the residence after receiving a page requesting drugs). *But see United States v. Feliz,* 182 F.3d 82, 85 (1st Cir.1999) (reciting as support for the search of the residence only the affiant's experience that "where ... an individual is demonstrated to be trafficking in drugs, it is not uncommon for there to be evidence of their drug trafficking activities ... kept at the trafficker's residence");[7] *United States*

---

**6.** The Washington Supreme Court in *State v. Thein,* 138 Wash.2d 133, 977 P.2d 582 (1999), recognized that jurisdictions are in conflict over this issue, *see id.* at 587, but that most courts "require that a nexus between the items to be seized and the place to be searched must be established by specific facts; an officer's general conclusions are not enough," *id.* at 588. The *Thein* court chose to embrace the majority view. *See id.* In so doing, it specifically overruled the case from which originated the language the State relies on here. *See id.* at 589. The *Thein* court explained:

> [O]ur precedent requires probable cause be based on more than conclusory predictions. Blanket inferences of this kind substitute generalities for the required showing of reasonably specific "underlying circumstances" that establish evidence of illegal activity will likely be found in the place to be searched in any particular case. We reiterate that "[p]robable cause to believe that a man has committed a crime ... does not necessarily give rise to probable cause to search his home."

*Id.* (second alteration and omission in original).

**7.** The State quotes this case for the proposition that

> [t]he nexus between the objects to be seized and the premises searched need not, and often will not, rest on direct observation, but rather "can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime]."

*United States v. Feliz,* 182 F.3d 82, 88 (1st Cir. 1999) (quoting *United States v. Charest,* 602 F.2d 1015, 1017 (1st Cir.1979)). The quoted language is taken from a case addressing a warrant to search a defendant's residence for a gun used in a murder. *See Charest,* 602 F.2d at 1015. In the underlying case, the First Circuit, although recognizing that a nexus may be shown by reasonable inferences, *see id.* at 1017, mentioned that "[c]ommon sense tells us that it is unlikely that a murderer would hide in his own home a gun used to shoot someone," *id.,* and ultimately determined that the search warrant was *not* valid because there was a "total lack of nexus between

*v. Williams,* 974 F.2d 480, 481 (4th Cir.1992) (relating that the only fact supporting the search of the suspect's hotel room was that the suspect was a drug dealer wanted on a fugitive warrant from another state where he had used his prior residence as a drug processing plant). Thus, we remain unconvinced that a broad generalization about drug dealers, unsupported by any underlying factual circumstances that would connect drugs to the drug dealer's home, is alone sufficient to support a finding of probable cause that the drugs are at the drug dealer's home.

¶ 8 Here, Vasquez and the unidentified Hispanic male, presumably an accomplice, were involved in five controlled buys, three times using a vehicle registered to Vasquez. Although the police sometimes observed Vasquez returning to his home *after* the controlled buys, this only connects the home to Vasquez and does not connect the home to the drugs. The only other fact in the affidavit that could support an inference that the drugs were in Vasquez's home is the speed with which drugs were supplied in response to the CI's telephone requests. The State argues that "[t]he speed with which [Vasquez] was able to regularly supply cocaine on short notice further supports the inference that [Vasquez] kept his cocaine in a readily accessible but secure location, *such as* his home." (Emphasis added.) But as the State's brief indirectly admits, it is equally as likely that the drugs were stored at the accomplice's home—or any other location for that matter—as it was that the drugs were stored at Vasquez's home, notwithstanding the short time lapse between when the orders were placed and when delivery occurred. Had the fact of the quick responses been coupled with the fact that the phone number called was the phone at Vasquez's home or that the police had followed Vasquez *from* his house to a buy, this would have supported a reasonable inference that the drugs were stored at Vasquez's home. But the affidavit here had no such information showing a nexus between the drugs and Vas-

quez's home; instead, the affidavit ultimately relied only on a generalization about where drug dealers keep their drugs, and such a generalization, as we discussed above, is insufficient to support a finding of probable cause. While the police in this matter "guessed" correctly, the probable cause requirement of the Fourth Amendment does not permit the State to search and seize evidence based solely on hunches, even when those intuitions are based on training and experience. *See State v. Hechtle,* 2004 UT App 96, ¶¶ 14–16, 89 P.3d 185 (concluding that an arresting officer's suspicions based on his training and experience were insufficient to establish probable cause where the officer did not validate his suspicions).

## CONCLUSION

¶ 9 Given the absence of evidence in the affidavit tying the drugs Vasquez sold to his home, the magistrate lacked a substantial basis to determine that probable cause existed that drugs would be found at Vasquez's home. Accordingly, we reverse.

¶ 10 I CONCUR: JUDITH M. BILLINGS, Judge.

THORNE, Associate Presiding Judge (dissenting):

¶ 11 I agree with the majority opinion that the probable cause necessary to support a search warrant requires a nexus between suspected criminal activity and the place to be searched. *See supra* ¶ 5. The probable cause affidavit justifying a search warrant must support the magistrate's decision that there is a "fair probability" that evidence of the crime will be found in the place named in the warrant. And I agree that in determining whether there is a fair probability that evidence of a crime will be found in the place to be searched, the magistrate may draw "reasonable inferences" from the information presented in the search warrant, which inferences must be based on specific facts and

---

the gun and [the] defendant's home," *id.* at 1018. Indeed, in its consideration of cases from multiple jurisdictions, the court observed,

We have been unable to find any case in which a search warrant was issued for a person's

home on the sole basis that a handgun had been used by that person in the commission of the type of crime where the bullets used could be traced to the gun.

*Id.* at 1017.

cannot be the result of broad generalizations. *See supra* ¶ 6.

¶ 12 Nevertheless, I respectfully dissent because I do not agree with the majority that the probable cause affidavit had no information to show the nexus between the drugs and Vasquez's home. Rather, I conclude that the affidavit in support of the search warrant provided enough facts for the trial court to properly decide that the affidavit demonstrated "a sufficient nexus" between Vasquez's cocaine distribution and his home "to support the issuance of the search warrant." " '[T]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. Penn*, 2004 UT App 212, ¶ 13, 94 P.3d 308 (alteration and omission in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "Common sense" is the hallmark in determining the propriety of the issuance of the search warrant. *See State v. Williamson*, 674 P.2d 132, 133 (Utah 1983).

¶ 13 In my opinion, under the totality of the circumstances set forth in the affidavit, there is a fair probability that cocaine or evidence of Vasquez's cocaine distribution would be found in his residence.[1] Here, Vasquez and an unidentified Hispanic male were involved in five controlled buys, three times using a vehicle registered to Vasquez at his home address. On two occasions, immediately after the controlled buys, Vasquez and the unidentified Hispanic male returned to Vasquez's residence. The affidavit identified that cash was one of a number of items to be secured by the search warrant. It is reasonable to infer from these circumstances that Vasquez would require a secure place to store any cash obtained from the controlled buys as well as other items indicative of the distribution of controlled substances such as buy/owe sheets, scales, packaging materials, paraphernalia, cocaine, etc. It is also reasonable to infer that Vasquez would store said items in his residence since it was a secure and accessible storage place which Vasquez returned to after two of the controlled buys. These inferences provide an adequate basis to connect the suspected criminal activity to Vasquez's residence and are based on specific facts articulated in the affidavit.

¶ 14 I, like the majority, do not believe that an affidavit that details only facts showing that the accused was involved in selling drugs allows a reasonable inference that those drugs are stored in the accused's residence. *See supra* ¶ 6. I acknowledge that the information in the probable cause affidavit is marginal; however, it is enough to show the nexus between the drug contraband and Vasquez's residence. Although I conclude that the affidavit information in this case is enough to support probable cause, I note that this is a very close question. *See Gates*, 462 U.S. at 236–37 & n. 10, 103 S.Ct. 2317 ("[A]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." (internal quotation marks omitted)). Anything less than the information provided in this case and I would likely reach the opposite conclusion.

¶ 15 Based on the reasonable inferences derived from the information provided in the affidavit, I conclude that there was probable cause to issue the search warrant in the instant case. Such a conclusion is fortified by the preference for warrants in doubtful or marginal cases, *see id.*, and the requirement that we "afford the magistrate great deference and consider the affidavit relied upon by the magistrate in its entirety and in a common sense fashion," *State v. Saddler*, 2004 UT 105, ¶ 7, 104 P.3d 1265 (internal quotation marks omitted).

---

1. The affidavit provided that
    affiant and officers expect to locate controlled substances to include cocaine, paraphernalia, cash, buy/owe sheets, scales, packaging material, correspondence and other controlled substances and items indicative of the use/distribution of controlled substances to include electronic messaging devices such as pagers, cell phones, caller id equipment and dangerous weapons.