**STATE of Utah, Plaintiff and Appellee,**

v.

**Ophelia BUFORD, Defendant
and Appellant.**

**No. 900444–CA.**

Court of Appeals of Utah.

Oct. 24, 1991.

James C. Bradshaw and Joan C. Watt,
Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Marian Decker,
Salt Lake City, for plaintiff and appellee.

Before BENCH, GREENWOOD and
JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Appellant, Ophelia Buford, appeals from a conviction for possession of a controlled substance with intent to distribute. She argues that a search warrant was issued improperly and that the trial court therefore erred when it denied her motion to suppress. We affirm.

## BACKGROUND

On January 3, 1989, Salt Lake City Police Officer Zane D. Smith, acting undercover, first met Yolanda Rodriguez. He requested her assistance in purchasing narcotics. Rodriguez agreed and directed Officer Smith to Buford's residence at 474 North Grant Street in Salt Lake City. Rodriguez, using money given to her by Officer Smith, purchased cocaine from within the residence. Rodriguez identified either Buford or Bobby Root as her supplier in that transaction. Officer Smith then arranged to meet with Rodriguez later that evening, ostensibly for another drug purchase. Officer Smith returned to the Metropolitan Narcotics Task Force offices where he discussed using Rodriguez as an informant with other officers. He also learned Rodriguez had a prior criminal record. He then returned to Rodriguez, identified himself as a police officer, and arrested her. He later offered to negotiate with the county attorney's office for a reduction of the charges against Rodriguez, in return for her cooperation in making a controlled narcotics purchase. Rodriguez agreed to make the buy and to be monitored by an electronic transmitter during the controlled purchase. She further agreed to be searched prior to the controlled purchase and to use marked currency provided by Officer Smith for the transaction. Rodriguez told Officer Smith she had frequently purchased drugs from Buford and that she had seen a handgun in Buford's house within the last seventy-two hours.

Police officers then prepared a search warrant affidavit describing anticipated events and consequences of the controlled purchase. While the evidence was disputed, this affidavit identified Buford, rather than Bobby Root, as Rodriguez's supplier of cocaine within Buford's residence during the first uncontrolled purchase.

Rodriguez was searched, and then supplied with the marked money and transmitter. While police officers observed Rodriguez visually and electronically, she entered the residence to make the drug purchase. After she entered, the officers heard, via the transmitter, discussions regarding a proposed drug purchase. They then heard a male voice making what they described as sexual advances to Rodriguez. After Rodriguez's third or fourth request for help, the officers, concerned for Rodriguez's safety, entered the residence, thereby aborting the controlled purchase. The officers secured the premises, ascertaining the location of all persons in the house. In the process of so doing, they observed cocaine and drug paraphernalia in plain view on a night stand in an upstairs bedroom. While officers maintained their secured position, Officer Smith returned to his office and completed the search warrant affidavit.

The original preprepared affidavit described the first uncontrolled buy and further stated the following:

> During the controlled buy the [reliable informant] ... was given Metro Narcotics Buy Money listed in attachment A prior to the buy. The [reliable informant] was found in possession of cocaine after the buy and did not have the Metro Buy Money. The [reliable informant] was kept under constant surveillance as the [reliable informant] approached and returned from the premises. Based on affiant's observations and surveillance, the only possible source for the cocaine on each buy occasion was the inside of the premises named and described on this warrant affidavit.

After the buy was thwarted, Officer Smith added the following addendum to the affidavit:

> Your affiant was attempting to complete the controlled buy aforementioned in this warrant/affidavit on 1/4/89 at approximately 0025 hrs at the address

listed on this warrant/affidavit. During the control buy your affiant was monitoring the [reliable informant] with body bug transmittor [sic] when your affiant and Det. DeWitt heard the [reliable informant] call for help at least three times. Your affiant also could hear what sounded like a male person attempt to direct the [reliable informant] into a section of the premises that the [reliable informant] did not want to go. Seconds later your affiant and Det. DeWitt could hear loud tumultuous banging sounds that affiant and Det DeWitt perceived as an assault [on] the [reliable informant]. Entry was made by your affiant and Det DeWitt fearing for the safety of the [reliable informant], your affiant having knowledge of weapon offenses by one of the suspects. Once entry was made and persons inside the premises secured for officer safety found in plain view was, ⅛ ounce of cocaine on a nightstand inside the main bedroom upstairs. Also your affiant observed in plain view two pipes which appeared to have been used for smoking cocaine in the same bedroom. Your affiant was unable to complete the controlled buy that was mentioned earlier in this warrant/affidavit.

The affidavit was presented to a magistrate who issued a search warrant. The subsequent search of the residence produced the following items admitted into evidence at Buford's trial: (1) various items of drug paraphernalia; (2) an eighth ounce of cocaine; and (3) a purse containing cocaine. The purse was linked to Buford through clothing and shoes found nearby, items in the purse, and residency papers found nearby.

After an evidentiary hearing, the trial court denied Buford's pretrial motion to suppress evidence seized pursuant to the search warrant, finding that exigent circumstances justified the warrantless entry into the residence. The court further found that the possible misidentification of Buford rather than Root as Rodriguez's supplier, was neither willful nor made with reckless disregard for the truth and that the remainder of the affidavit constituted probable cause under the totality of the circumstances.

Buford's argument on her motion to suppress was based on the Fourth Amendment to the United States Constitution. She did not argue under Article I, Section 14 of the Utah Constitution.

Following her conviction after a jury trial, the trial court sentenced Buford to one to fifteen years in the Utah State Prison. This appeal followed.

## ISSUES

Buford contends the trial court erred in finding that any mistakes or omissions in the search warrant affidavit were not intentional or made with reckless disregard for the truth. Such errors, Buford contends, should automatically invalidate the search warrant under Article I, Section 14 of the Utah Constitution.

Buford also contends the trial court erred in denying her motion to suppress because the search warrant affidavit failed to establish probable cause under the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Utah Constitution.

## STANDARD OF REVIEW

"[I]n the absence of special circumstances, the appellate court will not rule on available grounds not addressed in the trial court." *State v. Webb*, 790 P.2d 65, 78 (Utah App.1990). Of those issues addressed, "[w]e review the findings of fact supporting a trial court's decision on a motion to suppress under a clearly erroneous standard." *State v. Bobo*, 803 P.2d 1268, 1271 (Utah App.1990); Utah R.Civ.P. 52(a). "Clear error is indicated when the trial court's factual assessment is against the clear weight of the evidence or it induces a firm conviction that a mistake has been committed." *State v. Droneburg*, 781 P.2d 1303, 1305 (Utah App.1989). But, "in assessing the trial court's legal conclusions based upon its factual findings, we afford it no deference but apply a 'correction of error' standard." *State v. Johnson*, 771 P.2d 326, 327 (Utah App.1989) (quoting

*Oates v. Chavez,* 749 P.2d 658, 659 (Utah 1988)), *rev'd on other grounds,* 805 P.2d 761 (Utah 1991).

## ANALYSIS

### Utah Constitution

■ Buford argues in two instances for application of Article I, Section 14 of the Utah Constitution. First, she argues that if misstatements in a search warrant affidavit are intentional or made with reckless disregard for truth, the search warrant should be invalid under the Utah Constitution. Second, she argues that Article I, Section 14 should be interpreted consistently with the United States Supreme Court's decisions in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the so-called *Aguilar–Spinelli* test. This standard was replaced with a "totality of the circumstances" approach in the later decision of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Although Article I, Section 14 of the Utah Constitution may be subject to interpretation differing from its similarly worded federal counterpart,[1] we do not reach these issues for the following reason. Even though the Utah Constitution is subject to independent analysis, argument for such interpretation generally should begin in the trial court. This court has previously declined to consider Utah constitutional arguments because "[n]ominally alluding to such different constitutional guarantees without any analysis before the trial court does not sufficiently raise the issue to permit consideration by this court on appeal." *Johnson,* 771 P.2d at 328. Exceptions to this general rule arise only if there are exceptional circumstances or if plain error occurred. *Webb,* 790 P.2d at 78. This case presents neither exceptional circumstances nor plain error. Therefore, we analyze Buford's remaining arguments under the Fourth Amendment only.

### Fourth Amendment

Buford first argues that the court erred in finding that the affidavit's statements identifying Buford rather than Root as the supplier of the first illegal drugs were not intentional misstatements nor made with reckless disregard for the truth. We find evidence in the record supporting that finding and, deferring to the trial court's opportunity to observe the witnesses' demeanor, find no error in that finding.

Buford also argues that the affidavit fails to establish probable cause. She contends that use of the preprepared affidavit with the later added addendum obviates probable cause because of the inconsistencies and contradictions in the affidavit. She also maintains that describing Rodriguez as a "reliable informant" in the affidavit, is a misrepresentation. Rodriguez was not actually reliable, says Buford, because Officer Smith had met her only that same day, she had a prior criminal record, she had not previously provided any information to law enforcement, and she was cooperating only to obtain a break on her own pending criminal charges.

■ Probable cause is determined from the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 328, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "[T]he veracity, reliability, and basis of knowledge of informants is a factor to be considered within the totality of the circumstances." *State v. Brown,* 798 P.2d 284, 286 (Utah App.1990). In reviewing a magistrate's probable cause determination, "the reviewing court should pay 'great deference' to the magistrate's decision." *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)). Fourth Amendment analysis "requires only that the reviewing court conclude 'that the magistrate had a substantial basis for ... [determining] that probable cause existed.'" *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332 (citations omitted). This court will

---

1. *See, e.g., State v. Larocco,* 794 P.2d 460, 465 (Utah 1990); *State v. Sims,* 808 P.2d 141, 147–48 (Utah App.1991).

not engage in a de novo determination of probable cause, but will consider only whether " 'the evidence viewed as a whole' [provides] a 'substantial basis' for the finding of probable cause." *State v. Ayala,* 762 P.2d 1107, 1110 (Utah App.1988) (quoting *Massachusetts v. Upton,* 466 U.S. 727, 732–33, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984)). If the defendant claims intentional misstatements or omissions or reckless disregard for the truth in the affidavit, a hearing must be held. If the court agrees with the defendant's characterization, the court must then determine whether probable cause exists after excising such misstatements. *Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978).

Furthermore, although prepreparation of search warrant affidavits is not condoned, it is necessary in some circumstances. *State v. Slowe,* 728 P.2d 110, 111–12 (Utah 1986). In *Slowe,* an affidavit was prepared prior to a sting operation, describing what the officer anticipated would take place. The supreme court found that prepreparation was necessary "in certain special circumstances." *Id.* The court was more concerned with whether discrepancies between the affidavit and what actually transpired were knowingly, intentionally or recklessly false.

■ Prepreparation was justified in this case also, because of the anticipated controlled buy and the officer's knowledge about the house's occupants, including information about prior criminal records and weapons within the house. In addition, we agree with the State that the addendum effectively explains and modifies any inaccurate statements in the search warrant affidavit relating to the controlled purchase. The statement in the addendum that "[y]our affiant was unable to complete the controlled buy that was mentioned earlier in this warrant/affidavit," clearly negates previous statements referring to details of the expected controlled purchase.

■ The trial court made no finding as to whether Rodriguez was accurately described as a reliable informant. We find, however, that the affidavit sufficiently sets forth facts establishing Rodriguez's reliability under the circumstances. Rodriguez had already purchased cocaine in Buford's residence on behalf of Officer Smith and had given detailed information about Buford's prior criminal history of illegal drug use and sale. Buford has not established how additional facts, if included in the affidavit, would negate probable cause. Indeed, the fact that Rodriguez was cooperating with police in order to mitigate her own circumstances only bolsters her incentive to be truthful.

■ The *Gates* "totality of the circumstances" test emphasizes that "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. Here, Buford's prior drug related history, the circumstances of Rodriguez's unwitting buy, and the presence of drugs and drug paraphernalia in plain view of police officers following forced entry under exigent circumstances, all set forth in the affidavit, provided the magistrate with the required " 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* 462 U.S. at 238, 103 S.Ct. at 2332 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).

In conclusion, we find that based on the totality of the circumstances presented in the affidavit, the magistrate had a substantial basis for finding that probable cause existed for issuance of the warrant. We therefore affirm Buford's conviction.

BENCH and JACKSON, JJ., concur.