2004 UT App 212

**STATE of Utah, Plaintiff and Appellee,**

v.

**Nathaniel F. PENN, Defendant and Appellant.**

No. 20030638–CA.

Court of Appeals of Utah.

June 24, 2004.

Rehearing Denied July 20, 2004.

Ann Marie Taliaferro and James C. Bradshaw, Brown Bradshaw Anderson & Moffat, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General and Marian Decker, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, GREENWOOD, and ORME.

## OPINION

GREENWOOD, Judge:

¶ 1 Defendant, Dr. Nathaniel Penn, appeals his conviction of three enhanced second degree felony counts of Unlawful Possession of a Controlled Substance in a Drug–Free Zone, in violation of Utah Code Annotated sections 58–37–8(2)(a)(i) (Supp.2003) and 58–37–8(4)(a) (Supp.2003).[1] Penn argues that this court should reverse and remand for a new trial because (1) evidence obtained as a result of an invalid anticipatory warrant should have been excluded; (2) one of the jury instructions was plainly erroneous and denied Penn his right to a fair trial; (3) the State failed to disclose material information; (4) the trial court admitted prejudicial and irrelevant evidence of Penn's prior bad acts; and (5) the trial court failed to exclude statements obtained in violation of Penn's *Miranda* rights. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 Penn, a medical doctor, operated a small medical clinic in Moab, Utah, until the end of March 2002, when it closed for finan-

---

1. Although the statutes cited have been amended since Penn was charged, the amendments do not affect the outcome of this case. Therefore, for ease of reference, we cite to the most recent version of the statutes.

cial reasons unrelated to this case. Penn employed Lisa LaPlante in his office for approximately six months prior to closing. In early 2002, LaPlante contacted law enforcement regarding Penn's alleged illicit drug-related activities. After being contacted by the Drug Enforcement Agency (DEA) and the county attorney, LaPlante agreed to become a confidential informant. In exchange for her cooperation in providing information about Penn's drug activities, LaPlante was given $500 by the DEA, and a domestic violence felony assault charge against her husband was ultimately reduced to a charge of brandishing a firearm.

¶ 3 LaPlante informed law enforcement personnel of observations made while working with Penn at his clinic. For example, she heard Penn tell patients to return their unused medication to his office. Additionally, on at least two occasions, Penn gave some of the returned medication to LaPlante's husband to treat his bad back. LaPlante also told the authorities that she had observed Penn sleeping in the back room of the clinic with a tourniquet and bent needles on the floor. At other times, she said he would act "weird" and "walk almost into walls." LaPlante also told of one specific time when Penn's girlfriend, who also worked at the clinic, told her that the clinic was going to be closed the next day because she and Penn were going to "go do mushrooms."

¶ 4 In late April, DEA Agent Johnson and LaPlante met and discussed having LaPlante talk to Penn about mushrooms. Later, while wearing a hidden recording device, LaPlante met with Penn and told him her brother was in town and wanted her to take hallucinogenic mushrooms with him. She asked if it would be safe. Penn responded that "he had taken them plenty of times," and that "he had done them in the clinic." As LaPlante was leaving the meeting, Penn twice said that if her brother had extra mushrooms, he would like to buy them. Later, while visiting Penn's girlfriend at her and Penn's home, LaPlante observed a vial of Demerol in their refrigerator. On yet another visit when neither Penn nor his girlfriend was home, LaPlante observed a prescription bottle of Hy-

drocodone for a patient in Penn's bathroom medicine cabinet.

¶ 5 In part as a result of the information obtained from LaPlante, Agent Johnson prepared an anticipatory search warrant to search the Penn residence. The affidavit of probable cause stated:

On April 20, 2002, between 1000 and noon, DEA agents will meet with CI [ (confidential informant) ]. CI and an undercover agent (UC) will be searched and CI will be wired. CI or UC will be given some Psilocybin mushroom. CI's vehicle will also be searched. CI and an undercover agent will drive in CI's vehicle to the above described residence of Penn and Drew with the mushrooms. Agents will have CI and UC under visual and audio observation at all times driving to and from said residence. They will have CI and UC under audio observation while they are in the residence. It is anticipated that CI and UC will offer Penn and/or Drew the mushrooms for sale for either cash and/or controlled substance prescriptions. After CI and UC leave the residence, CI and UC and CI's vehicle will be researched.

Based on this affidavit, the magistrate determined there was probable cause to believe that psilocybin mushrooms and other narcotics would be discovered inside Penn's residence and issued the anticipatory search warrant.

¶ 6 On April 20, 2002, LaPlante and a DEA agent, acting as her brother, met with Penn at Penn's home. The agent asked if Penn was interested in buying some mushrooms or trading mushrooms for Hydrocodone. Penn was not interested in the trade, but did purchase two bags of hallucinogenic mushrooms. After making the mushroom exchange, LaPlante and the agent left. Law enforcement officers, who heard the exchange, moved in immediately to execute the anticipatory search warrant. After initially denying it, Penn eventually admitted buying the mushrooms and indicated that they could be found in the kitchen drawer. The search of Penn's home also yielded a prescription bottle containing eight Hydrocodone tablets, and a vial containing about 15 milliliters of Demerol.

¶ 7 Penn was thereafter charged with three enhanced second degree felony counts of Unlawful Possession of a Controlled Substance in a Drug–Free Zone, in violation of Utah Code Annotated sections 58–37–8(2)(a)(i) (2002), and 58–37–8(4)(a) (2002). Prior to trial, Penn moved for suppression of the physical evidence seized. He alleged that the anticipatory search warrant was invalid. After reviewing transcriptions and recordings of the conversations, and hearing arguments, the trial court denied the motion to suppress. After a jury trial, Penn was convicted on all three counts. Following his convictions, Penn filed a motion for a new trial which the trial court denied. Penn then filed a timely notice of appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Penn first argues that the magistrate erred in issuing an anticipatory search warrant. When analyzing this question, we look to see if " 'the magistrate had a substantial basis for ... [determining] that probable cause existed.' " *State v. Buford,* 820 P.2d 1381, 1384 (Utah Ct.App.1991) (alterations in original) (quoting *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)) (other quotations and citation omitted). "Our review of the affidavit in support of the search warrant focuses on whether the magistrate had a substantial basis for concluding that there were enough facts within the affidavit to find that probable cause existed." *State v. Womack,* 967 P.2d 536, 543 (Utah Ct.App.1998) (quotations and citations omitted). "We therefore review the affidavit as a whole and with a 'common sense' orientation, deferring to the magistrate's decision." *Id.* (citation omitted).

¶ 9 Penn next argues that one of the jury instructions was plainly erroneous and denied Penn his right to a fair trial. Because "a trial court's decision to use a jury instruction may be alleged to have impacted the defendant's right to a fair trial, ... such a conclusion would be reviewed for correctness." *State v. Daniels,* 2002 UT 2,¶ 17, 40 P.3d 611.

¶ 10 Finally, Penn argues that the trial court improperly denied his motion for a new trial. "We review the legal standards applied by the trial court for correctness. Otherwise we review a trial court's denial of a motion for new trial under an abuse of discretion standard." *State v. Bakalov,* 1999 UT 45,¶ 28, 979 P.2d 799.[2]

## ANALYSIS

### I. Validity of Anticipatory Search Warrant

¶ 11 Penn argues that the anticipatory search warrant issued in this case was invalid, and the evidence obtained from it should have been excluded. There are two general requirements for a valid anticipatory search warrant. First, it must be supported by probable cause, and second, the warrant or supporting affidavit must clearly set forth conditions precedent or triggering events to the warrant's execution. *See State v. Womack,* 967 P.2d 536, 543 (Utah Ct.App.1998). These two requirements are necessarily related because unlike traditional warrants, "[p]robable cause to support anticipatory warrants is conditioned on the occurrence of certain expected or 'triggering' events, typically the future delivery, sale or purchase of contraband." *Id.* (quotations and citations omitted). "An anticipatory warrant is invalid if the 'triggering event' does not arise." *Id.*

¶ 12 Penn argues that because the affidavit supporting the warrant did not specify that the triggering event would be Penn's purchase or acceptance of the mushrooms,

---

**2.** As to Penn's two arguments for a new trial, we affirm the actions of the trial court. First, "in reviewing a trial court's decision to admit or exclude evidence, we allow for broad discretion." *Jensen v. Intermountain Power Agency,* 1999 UT 10,¶ 12, 977 P.2d 474. Penn has not shown how the trial court abused its discretion by admitting the few statements to which Penn properly objected. Second, Penn has failed to adequately brief his argument that statements made in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), should have been excluded. Penn fails to provide this court with the necessary facts and legal support to make the requisite determination. *See Smith v. Smith,* 1999 UT App 370, ¶ 8, 995 P.2d 14 ("An issue is inadequately briefed when 'the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court.' " (citation omitted)).

the affidavit's express language failed to create probable cause. However, this court rejected a similar argument in *Womack*. *See id.* at 545. In that case, the police sought an anticipatory warrant to search a home after there was a controlled delivery of a UPS package that was addressed to defendant and contained a controlled substance. *See id.* at 539. The defendant argued on appeal that the anticipatory warrant lacked probable cause because the triggering event did not specifically require the delivery of the package to him. *See id.* at 545. He also argued that the police did not investigate whether he lived at the residence. *See id.* In rejecting these arguments, this court said, "[b]ecause the police ... stated plans [in the affidavit] for a controlled delivery of the package, the magistrate could reasonably conclude the marijuana would be at the ... address when the search took place, establishing the necessary nexus for probable cause." *Id.*

¶ 13 Furthermore, a magistrate's finding of probable cause in support of an anticipatory search warrant is determined from the "totality of the circumstances." *State v. Buford*, 820 P.2d 1381, 1384 (Utah Ct.App.1991). " '[T]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Id.* at 1385 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

¶ 14 The affidavit in this case specifically describes a recorded conversation between LaPlante and Penn which occurred approximately two weeks prior to the arrest. Wearing a recording device, LaPlante went to Penn's home and told Penn that her brother was in town and wanted her to do mushrooms with him.[3] LaPlante then asked Penn about the side effects of taking mushrooms. Based on his past experience using mushrooms, Penn told LaPlante how she would feel after using mushrooms. As LaPlante was leaving, Penn made the following offers

to purchase mushrooms from LaPlante's brother: "If he stocked any extra, we'll buy it," "if he's got any extra, I'll buy some from him," and "enough for two of us." The affidavit then describes the anticipated controlled sale of mushrooms to Penn. The affidavit states in part:

> They [agents] will have CI [ (confidential informant) ] and UC [ (undercover agent) ] under audio observation while they are in the residence. It is anticipated that CI and UC will offer Penn and/or Drew the mushrooms for sale for either cash and/or controlled substance prescriptions. After CI and UC leave the residence, CI and UC and CI's vehicle will be researched.

¶ 15 When this portion of the affidavit is read together with the background supporting facts, a "practical, common sense" interpretation is that Penn's acceptance or purchase of contraband would be the event providing probable cause that Penn was in possession of mushrooms. *Buford*, 820 P.2d at 1385. Although the affidavit did not expressly list this as the "triggering event," "given all the circumstances set forth in the affidavit ..., there [was] a fair probability that contraband or evidence of a crime [would] be found" in Penn's home after the controlled sale was made. *Id.* at 1385.

¶ 16 As Penn correctly points out, we have previously held that "the conditions controlling the warrant's execution should be explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." *Womack*, 967 P.2d at 544 (quotations and citations omitted). However, we also stated that "the specificity with which the magistrate should state the conditions dictating the warrant's execution will shift depending on the facts of each case." *Id.* Here, Penn's previous offer to buy mushrooms from LaPlante's brother, combined with his stated knowledge of, experience with, and interest in buying and using mushrooms, all set forth in the affidavit, provided the magistrate with a "substantial basis for

---

3. LaPlante's story of her brother coming to town and wanting to do mushrooms was fabricated by the DEA agent and LaPlante in order to later

conduct a controlled sale of mushrooms using an undercover DEA agent to act as LaPlante's brother.

... concluding that probable cause existed."[4] *Buford,* 820 P.2d at 1384.

¶ 17 Based on a "practical, common sense" reading of the facts and anticipatory events outlined in the affidavit, *Id.* at 1385, and giving appropriate deference to the magistrate's determination, we hold that the probable cause requirement "that a nexus exist between the contraband and the search location" was satisfied in this case. *Womack,* 967 P.2d at 545. We therefore affirm the trial court's rulings regarding the validity of the warrant.

## II. Propriety of Jury Instruction

### A. Invited Error

▪ ¶ 18 Penn next argues that the trial court erred by giving an erroneous jury instruction, thereby denying him a fair trial. Penn contends that the last sentence of jury instruction 6 misstated the elements of the drug possession charge. Instruction 6 stated:

> Physicians licensed to prescribe controlled substances must still obtain a prescription for any controlled substance for personal use. Physicians licensed to dispense or administer controlled substances are also permitted to possess reasonable quantities of controlled substances for dispensing or administering to patients, *but they are required to keep a record of controlled substances received for that purpose and dispensed or administered by them as physicians. A physician who fails to comply with this requirement possesses those substances illegally.*

(Emphasis added.)

▪ ¶ 19 The State's only argument in response is that if the trial court erred in using this instruction language, it was invited error. The State contends that Penn's trial counsel affirmatively approved instruction 6.

Under the invited error doctrine, " 'a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error.' " *State v. Geukgeuzian,* 2004 UT 16, ¶ 9, 86 P.3d 742 (citation omitted). A jury instruction "may not be assigned as error ... 'if counsel either by statement or act, affirmatively represented to the court that he or she had no objection to the jury instruction.' " *Id.* (citation omitted).

¶ 20 In support of its argument, the State points to the trial record where a discussion took place regarding the trial court's proposed language for instruction 6. After reading the proposed language to counsel, the trial court asked: "That sound about right to you? (Inaudible) actual language?" Then, Penn's trial counsel, Mr. Skordas, stated: "Right. I think so." The trial court then stated that counsel could pick up copies of the typed instructions later that day. The State argues that this reflects not only a failure to object to the instruction, but also an affirmative agreement with its use. However, the State fails to acknowledge other parts of the record which support Penn's argument that he objected to the instruction.

¶ 21 The record reflects that after the discussion about the proposed instruction language, Mr. Skordas asked the trial court, "Do you want to have a time where we will make our objections?" In response, the court scheduled objections for 7:30 the following morning, at which time, Mr. Skordas informed the judge that he had "a few" objections to the proposed instructions. Mr. Skordas then requested one change to what was later designated instruction 5, which the court accepted. Then the record reflects the following:

> Mr. Skordas:—I would ask the court to strike the very last sentence.

> The Court: Why?

---

4. Penn also argues that the warrant was invalid because some of the events outlined in the affidavit, which were to occur after the sale, did not actually occur. We have determined that the triggering event establishing probable cause was Penn's purchase or acceptance of the mushrooms. Furthermore, because the agents executing the warrant were simultaneously listening to the sale, they were aware of the exact moment the sale occurred and probable cause was established. Therefore, because probable cause existed prior to the time the other events were to occur, they were not necessary to establish probable cause. *See State v. Womack,* 967 P.2d 536, 543 (Utah Ct.App.1998) (stating that the likelihood of the triggering events occurring is what creates probable cause).

Mr. Skordas: Well, because the law, I think what the Court's attempted to do is to restate the statute, and the statute speaks for itself.

The Court: So you want me to give the statute to the jury to read?

Mr. Skordas: No, no. I want you to quit at the end of the statute, which is what you would have done had you not added that last sentence. That sort of is the statute. You paraphrased it, but I think in a way that makes sense logically to the jurors, and that would be my only request with respect to that instruction.

¶ 22 The trial court then denied Mr. Skordas's requested change. Because the proposed instructions being discussed were not numbered at the time, it is not clear precisely which instruction they were discussing. However, Mr. Skordas's concerns about the last sentence of the instruction restating and rephrasing the statute logically only fit with what was later designated as jury instruction 6.

¶ 23 While the State is correct that Mr. Skordas initially seemed to agree with the instruction language, his subsequent actions clearly reflect that it was only a tentative agreement. This was confirmed the next day when he asked the trial court to remove the last sentence of the instruction. By asking for this change, we cannot say that Penn "led the trial court into committing the error" which he now appeals. *Geukgeuzian*, 2004 UT 16 at ¶ 9, 86 P.3d 742 (quotations and citation omitted). Therefore, we reject the State's argument that Penn invited the alleged error he is now challenging.[5]

### B. Trial Court Error

¶ 24 We next address Penn's argument that it was error[6] for the trial court to include the last sentence of jury instruction 6. Penn contends that by offering instruction 6, the court equated the failure to keep adequate administrative records, as required by law, with the felony offense of unlawful possession. We agree. "The plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *State v. MacGuire*, 2004 UT 4, ¶ 15, 84 P.3d 1171 (quotations and citation omitted).

¶ 25 Under Utah Code Annotated section 58–37–8(2)(a)(i) (Supp.2003), it is a third degree felony for anyone

> knowingly and intentionally to possess or use ... a controlled substance, unless it was obtained under a valid prescription or order, directly from a practitioner while acting in the course of his professional practice, or as otherwise authorized by this chapter.

*Id.* In this case, the penalty was enhanced to a second degree felony because the possession occurred in a school zone. *See id.* § 58–37–8(4)(a) (Supp.2003).

¶ 26 Utah law provides that medical practitioners may possess controlled substances "to the extent authorized by their license and in conformity with this chapter." *Id.* § 58–37–6(2)(b) (Supp.2003). Chapter 37 also requires licensed persons to maintain records and inventories of the controlled substances in their possession. *See id.* § 58–37–6(5)(a). However, Chapter 37 does not provide a specific penalty for the violation of this record-keeping provision. By including the last sentence in instruction 6, the trial court improperly instructed the jury that a practitioner's failure to keep adequate administrative records of the controlled substances in his possession constituted "illegal possession," a third degree felony. *See id.* § 58–37–8(2)(b)(ii). While practitioners' possession must be "authorized by their license," *id.*

---

**5.** It should also be noted that in denying Penn's motion for a new trial based on this flawed instruction, the trial court implied that Mr. Skordas had agreed to the instruction's language. Because the record shows that Mr. Skordas raised questions about this instruction, the trial court erred in using this reasoning to deny the motion.

**6.** Penn captions this section of his brief as "The Jury Instructions Were Plainly Erroneous." However, his analysis is under a standard error, not plain error, theory. We therefore address the issue as standard error.

§ 58–37–6(2)(b), the statute does not contemplate that a practitioner face a third, or possibly second, degree felony [7] for failing to keep adequate or sufficient records.

¶ 27 By instructing the jury that "[a] physician who fails to comply with this [record-keeping] requirement possesses those substances illegally," the trial court affirmatively indicated to the jury that they could convict Penn of the second degree felony for failing to keep sufficient administrative records. This instruction diverted the attention of the jury from deciding whether the State had proved the statutory elements of the unlawful possession charge. For these reasons, the trial court erred by including the last sentence of instruction 6, as well as the preceding phrase regarding physician record-keeping requirements.

### C. Was the Error Harmful?

¶ 28 Finally, we examine whether the trial court's error was harmful to Penn. An error is prejudicial if it tends to "mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advise[ ] the jury on the law." *Laws v. Blanding,* 893 P.2d 1083, 1086 (Utah Ct.App.1995) (quotations and citations omitted).

¶ 29 Here, the trial court's erroneous instruction directed the jury to convict Penn if they found that he had failed to properly keep administrative records. Absent this instruction, and the trial court's improper legal conclusion, there is a reasonable likelihood that the outcome would have been more favorable for Penn because the jury may have otherwise concluded that Penn, as a physician, was authorized to possess the prescribed controlled substances. Therefore, we agree with Penn that his right to a fair jury trial was probably affected by the trial court's improper instruction.

¶ 30 Because we find that the trial court erred by including the last sentence of jury instruction 6, we reverse Penn's conviction on the two counts of Unlawful Possession of a Controlled Substance in a Drug–Free Zone for Penn's possession of Demerol and Hydrocodone. However, because instruction 6 did not affect the jury's determination of Penn's unlawful possession of psilocybin mushrooms, our reversal on the two prescription counts will not disturb Penn's conviction on the mushroom count.

### III. State's Failure to Disclose Information

¶ 31 Penn next argues that his motion for a new trial was wrongly denied because the State failed to provide him evidence about the cooperation agreement between LaPlante and the county attorney and the DEA. A defendant is entitled to receive from the prosecution any exculpatory or impeaching evidence. *See Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). The defendant is entitled to relief if he can show that the prosecution's failure to disclose resulted in prejudice. *See id.* at 281–82, 119 S.Ct. at 1948.

¶ 32 It is clear that the State failed to fulfill its duty to disclose all of the information pertaining to LaPlante's agreements with law enforcement. Due to our disposition of the Hydrocodone and Demerol charges, we need only determine whether the State's failure to disclose prejudiced Penn's right to a fair trial on the charge of unlawful possession of psilocybin mushrooms. We conclude it did not. The mushroom charge was based on Penn's unlawful possession following the undercover sale at his home. At trial, Penn's only defenses to the possession charge were the invalidity of the search warrant, and entrapment by law enforcement. We have previously sustained the anticipatory search warrant leading to the undercover sting operation, and Penn has not argued the issue of entrapment on appeal.[8] Therefore,

---

7. The "unauthorized possession" statute is enhanced to a second degree felony if committed within a school zone, near childcare facilities, public parks, houses of worship, shopping malls, sports facilities, theaters, or other public places. *See* Utah Code Ann. § 58–37–8(4) (Supp.2003). The fact that many practitioners' clinics are found in cities and towns near these types of public establishments is further support that this chapter was not intended to impose a second degree felony on the practitioner whose office makes any kind of record-keeping error.

8. We have also rejected Defendant's *Miranda* argument. *See* footnote 2.

LaPlante's testimony was irrelevant and unnecessary to Penn's conviction on this charge. Because the information withheld by the State would only go to the impeachment of LaPlante, its failure to disclose did not prejudice Penn's right to a fair trial on the mushroom possession charge.

## CONCLUSION

¶ 33 The probable cause requirement for the anticipatory search warrant was satisfied in this case based upon a commonsense reading of the search warrant and supporting affidavit. We therefore affirm the trial court's rulings regarding the validity of the anticipatory warrant.

¶ 34 Penn's challenge to instruction 6 was not invited error because Penn's trial counsel clearly raised his concerns with the trial court and did not acquiesce in the instruction. For the reasons explained above, it was error for the trial court to give instruction 6 to the jury. Therefore, Penn's conviction as to the two counts of unlawful possession of Demerol and Hydrocodone are reversed. Because we uphold the validity of the anticipatory search warrant, Penn's conviction for unlawful possession of psilocybin mushroom is affirmed.

¶ 35 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and GREGORY K. ORME, Judge.