******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* GAZMEN GJINI
(AC 36029)

DiPentima, C. J., and Keller and Mihalakos, Js.

*Argued September 18—officially released December 29, 2015*

(Appeal from Superior Court, judicial district Stamford-Norwalk, geographical area number one, Hudock, J.)

*Rachel L. Barmack*, with whom, on the brief, was *Ryan G. Blanch*, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *David R. Applegate*, assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Gazmen Gjini, appeals from the judgment of conviction, rendered following a jury trial, of selling narcotics in violation of General Statutes § 21a-277 (a), engaging police in pursuit (by failing to stop when signaled and increasing his speed in an attempt to escape and elude the police) in violation of General Statutes § 14-223 (b), and possessing a narcotic substance with the intent to sell in violation of § 21a-277 (a).[1] The defendant claims (1) that the trial court improperly denied his motion for a *Franks* hearing,[2] and (2) the evidence was insufficient to support his conviction of possession of a narcotic substance with the intent to sell. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. In 2009, the Stamford Police Department was investigating the defendant for illegal drug related activities. The police were assisted in their investigation by Dennis Thurman, an agent with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives. The police used a cooperating witness[3] to pose as a drug buyer and to purchase illegal drugs from the defendant. To this end, on June 13, 2009, under the supervision and surveillance of the police, the cooperating witness met with the defendant at a restaurant located on West Main Street in Stamford, during which interaction the cooperating witness and the defendant "talked about drugs."

One week following this initial meeting, and under the supervision and surveillance of the police, the cooperating witness contacted the defendant by telephone for the purpose of purchasing narcotics from him. The police provided the cooperating witness with $80 and an automobile to use to complete the transaction. The cooperating witness met the defendant at an agreed upon location, the parking lot of the restaurant located on West Main Street in Stamford, where they had their first meeting. When the defendant arrived at that location, the cooperating witness got into the defendant's automobile, at which time she gave the defendant $80 in exchange for slightly less than one ounce of cocaine. Following this transaction, which took approximately two minutes, the cooperating witness returned to her automobile and left the scene. The defendant, likewise, left the scene in his automobile.

Several weeks later, on July 2, 2009, the defendant sold drugs to one or more cooperating witnesses at the same location where the prior interactions at issue had occurred. After this interaction, one or more police officers observed the defendant drive to his residence, a single family home located at 179 Cedar Heights Road in Stamford.

On August 13, 2009, the police obtained an arrest

warrant for the defendant. That day, the police began to surveil the defendant's residence. The police observed an automobile that they had observed the defendant driving during the course of their investigation, a black 2009 Honda Accord with heavily tinted windows, parked in the driveway. The automobile was registered to Nahile Gjini, the defendant's mother. The police directed the cooperating witness to contact the defendant and arrange to purchase illegal narcotics from him. The cooperating witness informed the police that she had arranged for this transaction to take place at approximately 12:30 p.m., at the restaurant located on West Main Street in Stamford.

Shortly thereafter, the police observed the defendant exit the residence on Cedar Heights Road, get into the Honda, and drive to the restaurant located on West Main Street in Stamford, where he previously had sold narcotics to the cooperating witness. Two police officers traveling in an unmarked police automobile followed the defendant as he drove to the restaurant, and several other officers were positioned about the parking area near the restaurant, awaiting the defendant's arrival.

Events in the parking area of the restaurant unfolded quickly. When the defendant arrived, several police officers, in automobiles with lights and sirens activated, approached the defendant's automobile in an attempt to constrain his movement. One officer, Douglas Deiso, attempted to apprehend the defendant. While displaying his police badge, Deiso approached the defendant's automobile on foot and yelled, "police . . . ." Deiso ordered the defendant to turn off his automobile. The defendant looked at Deiso with a blank stare and, instead of obeying his command, he accelerated his automobile in Deiso's direction. Deiso escaped being struck only by moving away from the automobile. The defendant quickly sped away from the scene. In so doing, he dangerously maneuvered around police automobiles, drove on the wrong side of the road, and crossed the double lines on the roadway, ultimately driving onto a nearby highway. Several police officers engaged the defendant in a high-speed pursuit, but they were unable to apprehend him. Police later discovered the defendant's abandoned automobile in Greenwich. The police were unable to locate the defendant at this time.

Shortly thereafter, two police officers, Christopher Broems and Steven Perrotta, prepared search warrant applications covering the defendant's automobile and the defendant's residence on Cedar Heights Road in Stamford. After obtaining the warrants, the police executed the warrant at the defendant's residence, where the defendant's mother and an attorney were present. There were three bedrooms in the residence: one used by the defendant's mother, one used by the defendant's

brother, and one used by the defendant. During their search of the defendant's bedroom, the police found approximately fifty grams of cocaine in a nightstand. Also in the bedroom, the police found a number of items (including rubber gloves, plastic bags, a digital scale, a substance frequently used as a cutting agent for drugs and six cell phones) that were consistent with the illegal sale of narcotics. The police found approximately $13,000 in the residence, a large portion of which was found concealed in a bathroom that was located near the defendant's bedroom.[4]

Several days later, on August 18, 2009, the defendant, facing arrest under two warrants, turned himself in to the police. The present appeal followed his conviction after the jury found him guilty of illegally selling narcotics, possessing a narcotic substance with the intent to sell, and engaging the police in pursuit.[5] Additional facts will be set forth as necessary.

I

First, the defendant claims that the court improperly denied his motion for a *Franks* hearing. We disagree.

The following additional facts and procedural history underlie this claim. Prior to the start of trial, the defendant filed a motion for a *Franks* hearing.[6] The defendant requested that, following such hearing, the court should suppress, as the fruit of an illegal search, evidence that was seized by the police at the residence on Cedar Heights Road in Stamford, and dismiss "the narcotics charges" in the present case. In support of the motion, the defendant argued that, in the application for a warrant to search the residence, Broems and Perrotta, engaged in illegal and improper conduct in that they made false and misleading affirmative representations in their signed and sworn affidavit that was submitted with the application. The defendant argued that, absent these false representations, there were insufficient allegations to support a finding of probable cause to search the residence.

In paragraph two of the affidavit, the officers averred in relevant part that the defendant "is currently on probation." In paragraph four of the affidavit, the officers averred as follows: "[During a controlled purchase] that took place on July 2, 2009, Affiant Broems observed [the defendant] leave the meet location after conducting the narcotics transaction and drive to his house located at 179 Cedar Heights Drive, Stamford, CT, without stopping and speaking with anyone." The defendant, referring, in part, to a National Crime Information Center report that he attached to his motion, represented that the averment at issue in paragraph two was false because he had never been on probation. The defendant argued that this statement was deliberately false or was made with a reckless disregard for its truth. The defendant, referring in part to arrest reports that he

attached to his motion and the arrest warrant application itself, represented that an averment in paragraph four was false. Specifically, in paragraph four, the officers averred in relevant part that on July 2, 2009, Broems observed the defendant drive directly to the residence on Cedar Heights Drive following a controlled narcotics purchase. The defendant observed that police records that he submitted with the motion reflected that, following the controlled narcotics purchase on July 2, 2009, Broems followed the cooperating witness to a prearranged meeting location. The records did not reflect that, following the purchase, Broems followed the defendant. The defendant argued that the statement of Broems' activity was deliberately false or was made with a reckless disregard for its truth.

The state objected to the defendant's motion. The state conceded that the averment that the defendant was on probation was not correct. With regard to the second averment at issue in the defendant's motion, that Broems had observed the defendant drive directly to his residence following the controlled narcotics purchase on July 2, 2009, the state argued that the veracity of this statement presented a question of fact. The state argued, however, that the two statements at issue were not essential to a finding of probable cause. The state requested that the court review the application without regard for the statements at issue and conclude that, in their absence, probable cause to search the residence existed.

In its oral decision denying the defendant's motion, the court stated in relevant part: "My general comment is that I certainly have seen more articulate warrants. However, my evaluation of the case law allows me to consider the entire document . . . . I can consider the entire document as it relates to a finding of probable cause. . . .

"[P]aragraph one describes the experience of Officer[s] Broems . . . and Perrotta . . . as far as their experience in the narcotics division is concerned. Paragraph two describes an investigation into the defendant during the months of June, July, and August, 2009.

"That a cell phone number was being utilized based on that investigation to conduct cocaine deals. That the defendant was utilizing a black Honda Accord . . . to deliver cocaine in Stamford. That the vehicle in question was registered to another individual . . . [Nahile] Gjini . . . of 179 Cedar Heights Road.

"The investigation revealed that the defendant had been arrested for [the] sale of hallucinogen, possession of marijuana, smuggling, public indecency, failure to appear. And that he is a convicted felon.

"That paragraph three—June 20, 2009, July 2, 2009, and July 14, 2009, a confidential informant was deemed credible and reliable by the Bureau of Alcohol, Tobacco

and Firearms, and that this confidential informant made purchases of powder cocaine using government funds recorded on video and audio, if applicable. Tested positive for cocaine.

"That paragraph five indicates that on the thirteenth of . . . August, 2009, Officer Perrotta had an arrest warrant that was reviewed and signed for the defendant, and the arrest warrant was for the three counts of sale of narcotics. . . .

"That on the thirteenth of August, 2009, the affiants . . . [contacted] the same [confidential informant] we utilized on the previous three narcotics purchases, and we instructed the confidential informant to contact the defendant by phone and order up an amount of powder cocaine to lure the defendant out of his residence and arrest him on the outstanding arrest warrant. . . .

"It's clear that this is the same [confidential informant] who has conducted the three previous sales for which . . . [the police had obtained an arrest warrant for the defendant on August 13, 2009].

"That the [confidential informant] indicated that at about twelve o'clock that the defendant indicated he would meet the [confidential informant] at the same location as the three last narcotics deals in thirty minutes and that the affiants knew this location to be the parking lot of 1980 West Main Street, Stamford, Connecticut.

"Surveillance was set up at the purported residence of the defendant, which was 179 Cedar Heights Road . . . affording the officers a clear view of the residence and of the vehicle that he had been utilizing, [with the] same [Connecticut] registration . . . .

"Paragraph nine. That at 12:25, pursuant to all the information that the officers had accumulated up to that point, that this was the residence of the defendant, that he would be meeting the [confidential informant] at 12:30, the defendant exited that residence and a pursuit occurred and a stop, which is described in paragraph[s] ten, eleven, twelve . . . and thirteen . . . .

"It is not unreasonable for a magistrate to find that based upon the officers' information that 179 Cedar Heights Road was the residence of the defendant based on their prior knowledge and also based upon the fact that it's corroborated by what occurred at 12:25 . . . on August 13.

"It is not unreasonable for a magistrate to have found that out of that residence drugs were placed in that car.

"Certainly, the idea that one would use a car for storage of narcotics is not practical . . . it was not his car, it was another individual's automobile, and simply because he was not carrying a suitcase or a bag clearly visible to the officers does not mean that he did not have an illegal substance on his person when he exited

the house.

"[C]ertainly, the actions of the defendant . . . [as described in] paragraphs eight . . . nine, ten, eleven and twelve certainly show consciousness of guilt; his efforts to elude the police and follow up activities by the defendant further corroborate the reliability in the court's mind of the information that the police already had.

"As I indicated, we're not looking for proof beyond a reasonable doubt; we're looking for probable cause. I find that the information . . . that he was on probation to be, frankly, harmless at this point in light of the . . . fact that he had been arrested for various charges and was a convicted felon.

"I find that the information in paragraph four, even without that [information concerning Broems observations of the defendant on July 2, 2009], a finding of probable cause can be made for the issuance of a search warrant based upon the remaining paragraphs [of the search warrant application].

"I don't see where any of this information [at issue in paragraphs two and four] was deliberate falsification by the officers; I don't see a reckless disregard of the truth.

"I see mistakes that were made in the warrant; as I indicated, it is not, certainly, not the most articulate search warrant I have ever reviewed. However, I find no indication that there was a deliberate falsification or a reckless disregard of the truth, and certainly with those paragraphs removed, that portion . . . removed, I find that an independent, detached magistrate could find probable cause for the search of 179 Cedar Heights Road."

The defendant's arguments on appeal echo those that he raised before the trial court. The defendant focuses on the two alleged inaccuracies in the application, namely, that he was on probation and that Broems had followed him home after the controlled narcotics purchase on July 2, 2009. He argues, partially on the basis of the trial testimony of Broems and Perrotta, that these inaccuracies were intentional misrepresentations by the officers or, at the least, were statements made with a reckless disregard for their truth. Further, the defendant argues that these "indisputably false statements" misled the court at the time it issued the warrant. He argues, contrary to the conclusion of the trial court, that, absent a consideration of the two statements at issue, the facts alleged in the remainder of the warrant do not support a finding of probable cause to search the residence. He argues that nothing in the affidavit ties him to the residence "as a resident" or affords probable cause to believe that there were narcotics in the residence.

In *Franks* v. *Delaware*, 438 U.S. 154, 155–56, 98 S.

Ct. 2674, 57 L. Ed. 2d 667 (1978), the United States Supreme Court held: "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

"In order for a defendant to challenge the truthfulness of an affidavit underlying a warrant at a *Franks* hearing, he must: (1) make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and (2) show that the allegedly false statement is necessary to a finding of probable cause. . . . If the allegedly false statement is set aside, however, and there remains sufficient evidence to establish probable cause, a *Franks* hearing is not necessary. . . . Although the *Franks* decision referred only to false statements in the affidavit, we have held that material omissions from such an affidavit also fall within the rule . . . . As the Supreme Court noted in *Franks*, [t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . . There must be allegations of deliberate falsehood or of reckless disregard for the truth . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 363–64, 796 A.2d 1118 (2002).

In general terms, the issue of "[w]hether the defendant is entitled to a hearing pursuant to *Franks* . . . is a mixed question of law and fact that [is reviewable] on appeal." *State* v. *Bergin*, 214 Conn. 657, 662 n.4, 574 A.2d 164 (1990). When, however, the focus of the reviewing court's inquiry is not on whether challenged statements in a warrant affidavit were knowingly or intentionally false, or made with reckless disregard for their truth, but on whether such statements were necessary to an issuing court's determination of probable cause, the issue is one that invokes the reviewing court's plenary review. "Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on [that] issue, therefore, is subject to plenary review on appeal. . . . Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized

are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . Reasonable minds may disagree as to whether a particular affidavit establishes probable cause. . . .

"In determining the existence of probable cause to search, the magistrate should make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . In making this determination [of probable cause], the magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate." (Citations omitted; internal quotation marks omitted.) *State* v. *Pappas*, 256 Conn. 854, 864–65, 776 A.2d 1091 (2001). "On appeal, a court's factual findings underlying its probable cause determination are subject to review under the clearly erroneous standard. . . . We accord *plenary review*, however, to the determination that the facts as found amount to probable cause." (Citation omitted; emphasis added.) *State* v. *Robinson*, 105 Conn. App. 179, 191, 937 A.2d 717 (2008), aff'd, 290 Conn. 381, 963 A.2d 59 (2009).

The present claim centers around two statements in an arrest warrant affidavit. The state acknowledged before the trial court that the statement in paragraph two of the affidavit, concerning the defendant's probationary status, was false. Before the trial court, the state disputed whether the defendant made a substantial preliminary showing that the other statement, in paragraph four of the affidavit, concerning Broems' observations on July 2, 2009, was knowingly and intentionally false or whether it was made with reckless disregard for its truth. In contesting the defendant's claim, the state pursues this factual argument before this court. We need not resolve such issues, however, because, having carefully reviewed the warrant affidavit, we agree with the trial court's conclusion that a *Franks* hearing was unnecessary in the present case because the two statements at issue were not necessary to a finding of probable cause.

As a preliminary matter, we observe that the averment that the defendant was "currently on probation" was not necessary to a finding of probable cause. Insofar as the defendant's criminal history was, in a consid-

eration of all of the circumstances, relevant to a finding of probable cause, the affidavit set forth ample and more significant facts related to the defendant's criminal history and, specifically, his history of illegal drug offenses. In paragraph two, the officers averred in relevant part: "[A National Crime Information Center] check revealed that . . . [the defendant] has been arrested for, among other charges, sale of a hallucinogen, possession of marijuana, smuggling in prison, public indecency, and failure to appear. It also shows that . . . [the defendant] is a convicted felon . . . ."

The other challenged statement in paragraph four provided: "That on buy number two that took place on July 2, 2009, affiant Broems observed . . . [the defendant] leave the meet location after conducting the narcotics transaction and drive to his house located at 179 Cedar Heights Drive, Stamford, CT, without stopping and speaking with anyone." Certainly, this averment could be viewed as significant in an analysis of probable cause because it tended to link the defendant's criminal enterprise in selling narcotics with the place to be searched. Moreover, insofar as the averment was evidence that the defendant was observed at the residence on July 2, 2009, it linked the defendant to the place to be searched just weeks prior to the time that the police sought the warrant.

Despite these observations, however, we conclude that the other facts set forth in the affidavit were sufficient to find probable cause that illegal drugs or items connected to the defendant's criminal drug-selling enterprise would be found in the residence. The affidavit set forth the facts that the defendant had been investigated by the police during June, July, and August, 2009; that he was utilizing a cell phone to sell cocaine; that he was using a black Honda Accord to deliver cocaine in Stamford; that the Honda Accord was registered to Nahile Gjini of 179 Cedar Heights Road in Stamford, the premises to be searched; and that the defendant was a convicted felon with a history of drug related charges. The affidavit set forth facts from which it was fair to infer that on June 20, 2009, July 2, 2009, and July 14, 2009, during controlled drug purchases recorded by the police, the defendant had sold cocaine to a cooperating witness who was deemed to be a credible and reliable witness by the Bureau of Alcohol, Tobacco and Firearms.

The affidavit also set forth the fact that, on August 13, 2009, the date on which the police sought the search warrant, the police had obtained a warrant for the defendant's arrest for three counts of sale of narcotics.

Additionally, the affidavit set forth the facts that on August 13, 2009, the cooperating witness who had participated in the earlier controlled narcotics transactions involving the defendant had contacted the defendant via telephone and arranged to purchase powder cocaine

from him "to lure . . . [the defendant] out of his residence and [to] arrest him on the outstanding arrest warrant." At approximately noon on August 13, 2009, the cooperating witness informed the police that the defendant had agreed to meet her at approximately 12:30 p.m., at a parking lot in Stamford where he had conducted earlier narcotics sales with the cooperating witness.

In the application, the officers averred that, at approximately 12:10 p.m., they began to surveil the residence at 179 Cedar Heights Road, which they described as the defendant's "residence," where they observed the Honda Accord registered to Nahile Gjini. At 12:25 p.m., the officers observed the defendant exit the residence and enter the Honda Accord. The officers then followed the defendant as he drove to the parking lot at West Main Street in Stamford, the location where he had agreed to meet the cooperating witness. There, as officers surrounded the defendant's automobile (with lights and sirens activated) and attempted to approach the defendant's automobile, the defendant accelerated at a high rate of speed toward Deiso, who had to leap out of the way to avoid being struck. The defendant fled the scene, made his way to Interstate 95, and eluded police capture by traveling at speeds "upward of 90 miles per hour, swerving from lane to lane to elude the police and avoid hitting other motorists." The police located the defendant's automobile, which had been abandoned in Greenwich, but did not locate the defendant.

On the basis of these facts set forth in the affidavit, it would be reasonable for a magistrate to find that, on the date that the police applied for the warrant, the defendant, while inside the subject residence, had agreed to sell narcotics to a cooperating witness with whom he had made illegal sales of a similar nature in the recent past. Consistent with the information that the cooperating witness provided to the police about the agreed upon criminal transaction, the defendant left the subject residence and drove directly to the parking lot at West Main Street in Stamford. In light of his recent conduct in selling drugs, as well as the defendant's agreement to sell narcotics to the cooperating witness on August 13, 2009, the defendant's dangerous conduct in eluding the police, and later abandoning the Honda Accord in Greenwich, strongly supported an inference that the defendant possessed narcotics when he drove to the parking lot.

Broems and Perrotta averred that the subject residence at 179 Cedar Heights Road was the defendant's "residence." What was more significant in an evaluation of probable cause, however, were the facts set forth upon which a magistrate reasonably could infer that the defendant was present in the subject residence when he agreed to sell narcotics and exited the subject resi-

dence, with the narcotics, and drove directly to the agreed upon sale location, where he engaged the police in pursuit before abandoning the automobile in which he had been driving. The facts supported an inference that the defendant exited the residence with narcotics on his person before getting into the Honda Accord, which was not registered to him, but to Nahile Gjini. Although it is not a necessary inference, it would be reasonable for a magistrate to infer, based on the facts in the affidavit that the defendant was selling drugs out of his residence, that he stored narcotics and other evidence related to the sale of narcotics in his residence, rather than in an automobile that was registered to a third party.

"We have recognized that the business of dealing in illegal drugs often involves a course of conduct that continues over a long period of time and is usually considered to be a regenerating activity. . . . When a suspect has been carrying on an illegal activity for an extended period of time without detection, it is reasonable to conclude that evidence of his activity will be secreted in his home. . . . In the case of drug dealers, evidence is likely to be found where the dealers live. . . . Actual observations of illegal activity or contraband in the premises to be searched, however, are not required to establish probable cause." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Nazario*, 38 Conn. App. 588, 597, 662 A.2d 1313 (1995). "The nexus between the object to be seized and the premises to be searched [need] not rest on personal observation, but can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [the evidence]." (Internal quotation marks omitted.) *State* v. *Vallas*, 16 Conn. App. 245, 261–62, 547 A.2d 903 (1988), aff'd sub nom. *State* v. *Calash*, 212 Conn. 485, 563 A.2d 660 (1989).

It is significant, as well, that the facts surrounding the defendant's attempted sale of narcotics to the cooperating witness occurred on the same day that the police applied for the search warrant for the residence. The contemporaneous nature of these events made it highly likely that contraband related to the sale of narcotics would be found in a location to which the defendant had ready access, such as the residence from which he attempted to sell drugs earlier that day. "The determination of probable cause to conduct a search depends in part on the finding of facts so closely related to the time of the issuance of the warrant as to justify a belief in the continued existence of probable cause at that time. . . . Although it is reasonable to infer that probable cause dwindles as time passes, no single rule can be applied to determine when information has become too old to be reliable." (Citation omitted.) *State* v. *Johnson*, 219 Conn. 557, 566, 594 A.2d 933 (1991). Here, in light of the fact that the controlled buy was arranged

on the same day that the police applied for the warrant, the facts also supported an inference that, although the defendant left the residence with narcotics, additional evidence of criminal activity related to the sale of narcotics remained in the residence at the time that a magistrate was considering the application. The affidavit set forth facts that demonstrated that the defendant had a criminal history and had engaged in several drug sales. It was reasonable to infer that a drug dealer, such as the defendant, likely maintained an inventory of the drugs that he sold, instrumentalities related to the sale of narcotics, and records related to his narcotics sales, and that such contraband would have been present in the residence from which the defendant attempted to sell narcotics to the cooperating witness earlier that very day.

For the foregoing reasons, after excluding those facts challenged by the defendant, we agree with the court's analysis of the remaining facts set forth in the affidavit of Broems and Perrotta. Accordingly, we conclude that the court properly denied the defendant's motion for a *Franks* hearing.

## II

Next, the defendant claims that the evidence was insufficient to support his conviction of possession of a narcotic substance with the intent to sell. We disagree.

To support a conviction under § 21a-277 (a),[7] the state bore the burden of proving beyond a reasonable doubt two essential elements: (1) that the defendant possessed narcotics and (2) that the defendant intended to sell such narcotics to another person. The defendant claims that the evidence was insufficient to support a finding that he possessed the narcotic substance, approximately fifty grams of cocaine, which was found in a nightstand in one of the bedrooms of the residence located at 179 Cedar Heights Road in Stamford on August 13, 2009. The defendant argues that the state attempted to prove that he constructively possessed the cocaine merely by presenting evidence that the cocaine was found in a bedroom in his "family's home" or his "parents' home"[8] in which the police found an envelope that had been addressed to him. Also, among other arguments, he argues that neither the defendant nor any member of his family stated that the bedroom was his.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crespo*, 317 Conn. 1, 16–17, 115 A.3d 447 (2015).

"Possess," as defined in our Penal Code, "means to have physical possession or otherwise to exercise dominion or control over tangible property . . . ." General Statutes § 53a-3 (2). "[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had

control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime. . . . Numerous cases hold that the test for illegal possession of drugs is that the accused must know that the substance in question is a drug, must know of its presence and exercise dominion and control over it." (Citation omitted; internal quotation marks omitted.) *State* v. *Williams*, 110 Conn. App. 778, 785–86, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008).

The state presented the case to the jury on the theory that the defendant constructively possessed the cocaine found in one of the bedrooms of the residence that was searched by the police on August 13, 2009. Thus, our inquiry is whether the state presented enough evidence for the jury to have found that the defendant was aware of the presence of the narcotics in that bedroom and exercised dominion or control over them.

Turning to the evidence presented at trial, the state presented evidence that, beginning in 2004 and continuing through the time of the events at issue, the license history of the defendant, on file with the Department of Motor Vehicles, listed 179 Cedar Heights Road in Stamford as the defendant's address. Christopher Baker, a lieutenant with the Stamford Police Department, testified that the police had determined that the defendant was living at 179 Cedar Heights Road, a single-family private residence, during the time that the defendant was under investigation between June and August, 2009. Baker testified that he had observed the defendant enter or leave that residence approximately four or five times during the course of his surveillance of the residence in 2009. Baker testified that he had not seen any evidence suggesting that, at that time, the defendant was residing anywhere else.

Additionally, Perrotta testified that after the controlled narcotics purchase involving the defendant and the cooperating witness had occurred on July 2, 2009, a member of the police department, possibly Broems, had observed the defendant return to 179 Cedar Heights Road. There was testimony from several witnesses that Broems and Perrotta, conducting surveillance of the residence on August 13, 2009, observed the defendant exit the residence on Cedar Heights Road and drive directly to the parking lot on West Main Street in Stamford after he had arranged to sell narcotics to the cooperating witness. The state presented testimony from Baker that Nahile Gjini resided at 179 Cedar Heights Road and that the Honda Accord used by the defendant

was registered to her at that address.

The state presented testimony from Broems, who participated in the search of the residence on Cedar Heights Road, that there were three bedrooms in the residence. Baker, who also participated in the search, testified that the defendant's mother had identified one of the bedrooms as belonging to her. Perrotta, another participant in the search, testified that he had identified another bedroom as belonging to the defendant's brother because it contained personal effects of the defendant's brother.[9] Perrotta agreed that this room did not look "like it had been lived in recently" and was not "messy" at all.

Perrotta agreed during his testimony that the third bedroom, which the police identified as that of the defendant, appeared to be "lived in." Broems testified that, in contrast with the bedroom that the police identified as belonging to the defendant's brother, the defendant's bedroom contained an unmade bed, and that found inside the bedroom were sneakers, bottles of cologne, and "tons of hats . . . ." Baker testified that, while searching the bedroom that they identified as that of the defendant, the police discovered an envelope that was addressed to the defendant at "179 Ceader Heights Rd" in Stamford. The envelope was introduced into evidence as state's exhibit fifteen. There was testimony that, in this same bedroom, the police discovered approximately fifty grams of cocaine as well as paraphernalia that the jury reasonably could have found to be instrumental in the sale of drugs, including disposable rubber gloves; Ziploc bags; plastic baggies; "fish scale," which police know to be used as a cutting agent for powder cocaine; six cell phones; and a digital scale.

On the basis of the foregoing evidence and the reasonable inferences to be drawn therefrom, it was reasonable for the jury to find that on August 13, 2009, the defendant resided at 179 Cedar Heights Road. In addition to the foregoing evidence concerning the residence, the jury was presented with evidence that in the months prior to the search, the defendant sold cocaine to the cooperating witness on different occasions leading up to the search and, on August 13, 2009, the day of the search, he left the residence for the purpose of selling cocaine to the cooperating witness. On the basis of all of the evidence presented, it was reasonable for the jury to find that the bedroom in which the police discovered the cocaine at issue was a bedroom that was occupied by and under the control of the defendant. Moreover, in light of the defendant's criminal conduct leading up to the search, including his conduct on the day of the search, it was reasonable for the jury to find that the defendant was aware of the presence of the illegal substance in the bedroom, approximately fifty grams of cocaine, and that he, rather than another occupant of the residence searched, exercised dominion or

control over that substance. See *State* v. *Winfrey*, 302 Conn. 195, 211–13, 24 A.3d 1218 (2011) (accused's history of using related contraband or his possession of related contraband at time of his arrest may help to establish his constructive possession of contraband in question). The state presented strong evidence that the bedroom at issue was, in fact, his. The evidence of the defendant's drug related activities, both prior to and on the day of the search, along with the other evidence presented by the state, supported a finding beyond a reasonable doubt that the defendant constructively possessed the narcotics that were seized by the police during the search of that bedroom.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court sentenced the defendant to serve a total effective term of incarceration of ten years. In addition to the previously mentioned offenses, by way of the state's amended joint form information, the defendant also was charged with one count of attempting to assault public safety personnel in violation of General Statutes §§ 53a-49 (a) (2) and 53a-167c (a) (1), and possessing a narcotic substance in violation of General Statutes § 21a-279 (a). The jury found the defendant not guilty of the former offense. The jury found the defendant guilty of the latter offense but, at the close of trial, the court vacated that conviction on double jeopardy grounds.

[2] See *Franks* v. *Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[3] The cooperating witness had a lengthy history of assisting law enforcement in operations of this nature. She had worked with the Bureau of Alcohol, Tobacco and Firearms for several years and, in exchange for her assistance in prior cases, she received both money and what she agreed could be described as "consideration," in the form of favorable sentencing, in association with charges that were pending against her. The cooperating witness testified that, in connection with the present case, she was not promised anything except reimbursement for travel expenses associated with her presence in court to testify on the state's behalf.

[4] During their search of the bedroom used by the defendant's mother, the police found a quantity of marijuana. This discovery is not at issue in the present case. During their search of the defendant's automobile, the police found $84, but no illegal substances.

[5] The conviction of illegally selling narcotics was based on the defendant's conduct on June 20, 2009. The conviction of possessing a narcotic substance with the intent to sell and engaging the police in pursuit were based on the defendant's conduct on August 13, 2009.

[6] The defendant filed an initial motion dated March 26, 2013, and a supplemental motion dated April 16, 2013. The defendant's attorney represented that the defense had filed the supplemental motion after she learned of a discrepancy between the copy of the search warrant application in her possession (which comprised six pages) and the search warrant application in the custody of the court clerk (which comprised eight pages) on which the state relied. The defendant's attorney represented that she had received her copy from prior defense counsel, who had received it from yet another prior defense counsel. The defendant's attorney represented that the original defense counsel believed that she had received the application "from the state," but that "the state denies providing it and believes that the defendant most likely obtained that copy from either the police directly through the mail, or from the clerk's office."

Before the trial court, the defendant correctly observed that the clerk's copy of the application contained two additional pages, both of which were numbered as pages "2 of 6." Relying on this irregularity on the pages that were not originally in its possession, as well as what it deemed to be other variations in font, capitalization, and spacing between the additional two pages and the remainder of the application, the defendant characterized the additional two pages as "questionable" and of "[a] suspicious nature." The defendant argued that "without some evidence from the affiants as to why these discrepancies exist, the court must presume that the correctly paginated six page affidavit provided to the defendant is a true and correct copy

of the original." It is not in dispute that the two additional pages at issue set forth eleven additional paragraphs, consisting of averments by Broems and Perrotta in support of the warrant.

When the court considered the defendant's motion for a *Franks* hearing, it resolved the preliminary issue of what comprised the search warrant application. The state presented testimony from Broems concerning the issue, which was a topic of considerable argument by counsel. Essentially, Broems testified that the page numbering inaccuracy resulted from a formatting problem in the computer system used by the police to generate the application, and that he and Perrotta had completed, signed, and submitted the complete, eight page application to the court. The prosecutor represented that, although Perrotta was unavailable to testify at the hearing, his testimony would have been of a similar nature.

The court resolved this preliminary issue of what comprised the application by accepting as true Broems' testimony, and determining that any irregularities, including the inaccurate page numbering, on which the defendant relied, did not reflect any type of wrongdoing or deception on the part of the police or on the part of the state. The court determined that there were "reasonable explanations" for why the defendant's attorney did not have the complete application at an earlier time. Accordingly, the court rejected the defendant's argument that the court, in its analysis of the application, should not consider the additional two pages at issue.

Before this court, the defendant does not raise a claim of error related to the court's resolution of this preliminary issue of fact. Yet, in his analysis of the present claim, challenging the court's denial of his motion for a *Franks* hearing, the defendant fails to refer to or to address the significance of the *complete*, eight page warrant application that the court considered in ruling on his motion. Instead, he explicitly draws our attention to the information and averments contained in the *six* page application that he originally possessed. Likewise, in the appendix to his brief, the defendant attached what he labels as the "SEARCH WARRANT AFFIDAVIT" that the police filed with the court, yet, by virtue of the court's unambiguous ruling, this affidavit is incomplete. It sets forth only five of the sixteen numbered paragraphs in the affidavit that is part of the complete application.

We will confine our analysis to those claims adequately raised and presented to this court on appeal. See *State* v. *Carattini*, 142 Conn. App. 516, 529, 73 A.3d 733, cert. denied, 309 Conn. 912, 69 A.3d 308 (2013). In light of the court's unchallenged ruling with regard to the *content* of the application, we will consider the entire eight page application that the court considered when it ruled on the defendant's motion for a *Franks* hearing. This complete application includes sixteen separately numbered paragraphs setting forth averments by Broems and Perrotta.

[7] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[8] Although there was evidence that the defendant's mother resided at 179 Cedar Heights Road, there was no evidence as to who owned the residence.

[9] The defendant suggests that evidence that police found marijuana in his mother's bedroom and that his brother was under police investigation for one or more drug related offenses weighed against a finding that he possessed the cocaine found in the residence. Also, the defendant emphasizes that the police did not find "photos or any readily identifiable personal effects that were connected to [him]." Although this evidence or lack thereof may have supported a finding in the defendant's favor, it did not preclude a finding that he constructively possessed the cocaine at issue. In rejecting this argument, we reiterate that our role in reviewing the evidence following the defendant's conviction is to view the evidence in the light most favorable to a finding of guilt. See *State* v. *Crespo*, supra, 317 Conn. 16–17.